*J. B. Hicks* and *Dan R. Bruce,* contra.

---

# GEORGIA RAILWAY AND POWER COMPANY *et al. v.* TOWN OF DECATUR.

# GEORGIA RAILWAY AND POWER COMPANY *et al. v.* MAYOR AND COUNCIL OF COLLEGE PARK.

Upon request of counsel for plaintiff in error the decision of this court in the case of *Georgia Railway & Power Co.* v. *Railroad Commission of Georgia,* 149 *Ga.* 1 (98 S. E. 696, 5 A. L. R. 1), has been reviewed; and after consideration of the ruling there made, it appears that the requisite number of the Judges now presiding are not in favor of reversing the decision so reviewed, and therefore the ruling there made stands unchanged. This ruling controls adversely to the plaintiff in error the issues presented here. But the court is further of the opinion, that, independently of the ruling made in the case referred to, the Georgia Railway and Power Company was without authority to fix the rate which the plaintiffs in the court below sought to have enjoined, and that consequently the court did not err in granting the interlocutory injunction.

Nos. 2359, 2334. SEPTEMBER 27, 1921.

Injunctions. No. 2334 before Judge Pendleton. Fulton superior court. November 10, 1920. No. 2359 before Judge Hutcheson. DeKalb superior court. December 4, 1920.

*J. Prince Webster, Rosser, Slaton, Phillips & Hopkins,* and *Colquitt & Conyers,* for plaintiffs in error.

*Alfred C. Broom,* for City of College Park.

*L. J. Steele, Frank Harwell,* and *Green, Tilson & McKinney,* for Town of Decatur et al.

Justices Atkinson and Hill being disqualified, Judges Wright of the Rome Circuit, and Meldrim of the Eastern Circuit, were designated to sit instead.

WRIGHT, Judge. The differences arising between the parties in the case under consideration are based more upon legal contentions than upon disputed facts.

On April 1, 1903, the Georgia Railway and Electric Company, through its legally constituted officials, signed an agreement ratifying the terms of an ordinance passed by the Town of Decatur on March 3, 1903, which ordinance provided, among other things, that the street-railway company was "to never charge more than five cents for one fare upon its main Decatur line, referred to as the Rapid Transit Line, for one passenger and one trip upon its regular cars from the terminus of said line in the City of Atlanta to the terminus of same in the Town of Decatur, or from the terminus of same in the Town of Decatur to the terminus of the same in the City of Atlanta." This written agreement came about as the result of compromise between the parties, growing out of litigation through which the Town of Decatur sought to enjoin the Georgia Railway and Electric Company from tearing up and removing the line of the Atlanta Railroad Company in the Town of Decatur. The written agreement embodied the consent of the municipality to the removal and discontinuance of the line of the Atlanta Railroad Company, with the stipulation as to fare just quoted. Under this written agreement both parties acted without differences until some time in the year 1918, when the Georgia Railway and Power Company (the lessee of the Georgia Railway and Electric Company) petitioned the Railroad Commission to grant an increase of fare over their main Decatur line. This application was rejected by the Railroad Commission, which held that it was without jurisdiction to grant the increase of fare, under the proviso of the act of August 23, 1907, which prohibited them from interfering with existing rates where there was a valid, subsisting contract. On August 23, 1918, the Georgia Railway and Power Company sought a mandamus to compel the Railroad Commission to take jurisdiction and to act upon the application for an

increased rate over the electric line in question. This application was based upon an attack on the validity of the contract between the Town of Decatur and the Georgia Railway and Electric Company. This court upheld the judgment of the lower court denying the mandamus absolute, which was an adjudication that the Railroad Commission was without jurisdiction because of a valid, subsisting contract between the parties, to wit, the contract of April 1, 1903. On October 5, 1920, the Georgia Railway and Power Company and the Georgia Railway and Electric Company notified the Town of Decatur that on or after October 20, 1920, the fare on the main or north Decatur line would be seven cents, and that they denied the legality and validity of the so-called contract provision limiting the fare to five cents (set out in the ordinance of the Town of Decatur, March 3, 1903, and an agreement of April 1, 1903, signed by the Town of Decatur and the Georgia Railway and Electric Company). Just prior to the threatened raise in rates the Town of Decatur brought the case now under review, denying the right of the power company and the electric company thus to abrogate the contract of April 1, 1903, setting forth in their petition in detail the facts above stated. The defendant companies in their answer and cross-bill denied the validity of the contract of April 1, 1903, upon numerous grounds, and prayed that it be declared null and void, and that all parties be enjoined and restrained from interfering with it in fixing the rate of seven cents or any other just and non-discriminatory rate upon the Decatur line. After granting a temporary restraining order, the judge of the superior court, on December 4, 1920, continued the same of force, and granted the injunction as prayed in favor of plaintiffs and against the defendants. It is to this ruling of the court that exception is taken.

We are of the opinion that the presiding judge was right in granting the injunction as prayed. Under our law the rate of fare upon this and every electric railway company within the State must be fixed by the Railroad Commission, unless there is a valid, subsisting contract made prior to the act of August 23, 1907. The right to fix rates on electric-railway companies' lines is contained in the amendatory act of August 23, 1907 (Acts 1907, p. 72), which carries into effect the provision of

the constitution, art. 4, sec. 2, par. 1. Under the act of August 23, 1907, it is provided: "The powers and duties heretofore conferred by law upon the Railroad Commission are hereby extended and enlarged, so that its authority and control shall extend to street railroads and street-railroad corporations, companies or persons owning, leasing, or operating street railroads 'in this State; provided, however, that nothing herein shall be construed to impair any valid, subsisting contract now in existence between any municipality and any such company." The effect of the constitutional provision and the legislative enactments carrying it into effect was clearly to cover the entire scheme of rate fixing. If there existed, on August 23, 1907, a valid, subsisting contract which fixed the rate, it was conclusive, and neither the Railroad Commission nor either party to the contract can change or alter it. If there was a void contract for any of the numerous reasons urged by plaintiffs in error, then it was not a valid, subsisting contract, and the Railroad Commission only could and should fix a change in the rate. In the instant case the power company is assuming to do what the Railroad Commission refused to do, and what this court has held they were right in not doing, to wit, declare the contract of April 1, 1903, void. Not only this, but the plaintiffs in error are asking this court to now declare the contract void and enjoin all parties from interfering with the power company in fixing a fare of seven cents, or any other just, reasonable, and non-discriminatory rate over the line in question. If this is a void contract, the Railroad Commission alone has the right to change the fare; if it is a valid, subsisting contract, the power company is bound by it. Plaintiffs in error are met at the very threshold with the question of their right to declare void this contract of 1903; but, should we grant to them the right to do so, they are met with what appears to be an unanswerable objection, that the power company has no right to alter, change, or fix a rate differing from the existing rate under which it has been operating their line of railroad since 1903. This power is reserved alone by the constitution to the State, and by legislative enactment is placed in the hands of the Railroad Commission.

It is insisted that where the governmental authority fails to

exercise its power to control, and where no contract exists, the company has the right to fix its own fares, provided they are just, reasonable, and non-discriminatory. Granting this to be true, it is plain that such condition does not exist. The State of Georgia, in the amendatory act of 1907 referred to, clearly exercised this authority to regulate; and it is no answer to say that an appeal has already been made to the Railroad Commission, and that it has refused for want of jurisdiction. The Railroad Commission disclaimed jurisdiction, not because they were without power to fix rates for electric-railroad companies, but because in the case they had under review they were deprived of that right by the existence of a valid, subsisting contract. Whatever conclusion might be reached as to the validity of the contract of April 1, 1903, it would not affect the conclusion that the power company is without authority to change or fix rates on its electric lines, and this is exactly what it attempts to do, and what the trial court has enjoined it from doing in the instant case.

But the ruling of this court in the case of *Georgia Railway and Power Co.* v. *Railroad Commission*, 149 *Ga.* 1 (98 S. E. 696, 5 A. L. R. 1), if unreversed, is conclusive on the issue involved in the instant case. In that case Justice Beck rendering the decision said: "Under the provisos contained in the fifth section of the act approved August 23, 1907, embodied in the Civil Code, § 2662, the Railroad Commission of this State was without authority to exercise the powers conferred and extended by that act, so as to determine or fix fares upon lines of street railroads within the limits of any town or city between which and the street-railroad company operating such lines there was a valid, subsisting contract at the time of the passing of the act. There was such a contract between the City of College Park and the Georgia Railway and Power Company, and between that company and the Town of Decatur as to one line running from Decatur to Atlanta. . . Those contracts were in existence on the 23d day of August, 1907, and are still subsisting contracts. As we decided in the first part of this opinion, these contracts are not invalid, but are valid and subsisting contracts, and were valid and subsisting contracts on the 23d day of August 1907." This decision clearly settles the question that at the time of the execution of this contract both the Georgia Railway and Electric Company and the Town of Decater had authority to execute the contract of April 1, 1903.

Mr. Justice White, in the case of Southern Iowa Electric Co. v. City of Chariton, 41 Sup. Ct. 400 (255 U. S. 539, 65 L. ed. —), held: "Where, however, the public-service corporations and the governmental agencies dealing with them have power to contract as to rates, and exert that power by fixing by contract rates to govern during a particular time, the enforcement of such rates is controlled by the obligation resulting from the contract, and therefore the question of whether such rates are confiscatory becomes immaterial;" citing Freeport Water Company v. Freeport, 180 U. S. 587, 593 (45 L. ed. 679, 686, 21 Sup. Ct. 493); Detroit v. Detroit City R. Co., 184 U. S. 368 (46 L. ed. 592, 22 Sup. Ct. 410); Knoxville Water Co. v. Knoxville, 189 U. S. 434, 437 (47 L. ed. 887, 23 Sup. Ct. 531); Cleveland v. Cleveland City R. Co., 194 U. S. 519 (48 L. ed. 1103, 24 Sup. Ct. 756); Home Tel. & Tel. Co. v. Los Angeles, 211 U. S. 265, 273 (53 L. ed. 176, 182, 29 Sup. Ct. 50); Minneapolis v. Minneapolis Street R. Co., 215 U. S. 417 (54 L. ed. 259, 30 Sup. Ct. 118); Columbus R. &c. Co. v. Columbus, 249 U. S. 399 (63 L. ed. 669, 6 A. L. R. 1648, P. U. R. 1919D, 239, 39 Sup. Ct. 349).

We have been asked to review and reverse the decision in the case of *Georgia Railway and Power Company* v. *Railroad Commission of Georgia,* supra; but, upon review the requisite number of the Judges now presiding are not in favor of reversing the decision so reviewed, and therefore the ruling there made stands unchanged. And the court is further of the opinion, that, independently of this ruling as to the case which we are asked to review, the Georgia Railway and Power Company was without authority to fix the rate which the plaintiffs in the court below sought to enjoin; and consequently the court did not err in granting the interlocutory injunction.

What is said as to the case of Georgia Railway and Power Company v. Town of Decatur is also controlling in the case of the Georgia Railway and Power Company v. College Park.

*Judgments affirmed. All the Justices concur.*

GILBERT and GEORGE, JJ., concur in the judgment affirming the grant of the interlocutory injunction, and specially as to the ruling that the contracts between the municipalities and the street-railway company as to fares are valid, because bound by the decision in *Georgia Railway and Power Company* v. *Railroad Commission of Georgia,* supra.