## GEORGIA RAILWAY & POWER COMPANY ET AL. *v.* TOWN OF DECATUR.

ERROR TO THE SUPREME COURT OF THE STATE OF GEORGIA.

No. 463. Argued April 24, 25, 1923.—Decided June 4, 1923.

1. A judgment of a State Supreme Court which does not terminate the litigation between the parties in such manner that, should there be an affirmance here, the court below would have nothing to do but to execute the judgment it had rendered, is not a final judgment for the purpose of review in this Court, even though it be regarded by the state court as settling the law of the case. P. 436.

2. Upon review of a judgment of a State Supreme Court, its decision upholding the power of a municipality of the State, under the local constitution and laws, to enter into a rate contract with a street railway company is controlling upon this Court. P. 437.

3. But in deciding constitutional questions presented, this Court will determine for itself whether there is, in fact, a contract, and, if so, the extent of its binding obligations, but will lean to an agreement with the state court. P. 438.

4. A street railway company cannot avoid the obligation to abide by maximum rates fixed by a valid contract with a town, by showing that they have become confiscatory. P. 438.

5. A state statute extending the corporate limits of a town and construed by the State Supreme Court as having the effect of rendering applicable to the added territory maximum street railway rates fixed by an earlier contract between the town and the street railway company, impairs the obligation of the contract by adding to its burdens. P. 439.

6. In the absence of any showing that the classification is in fact unreasonable and arbitrary, a statute which empowers a commission to revise the rates of street railway companies as they may be fixed by future contracts with municipalities, but not those fixed by contracts existing when the statute passed, cannot be said to violate the Equal Protection Clause of the Fourteenth Amendment, as applied to a company whose contract is thus excepted and prescribes a maximum rate which the company claims to be inadequate. P. 439.

7. An order of a state commission requiring a street railroad company to continue issuance of transfers and to provide additional

seating capacity and trailer cars, *upheld* against constitutional objection, in view of obligations imposed by a contract between the company and a municipality and the powers of the commission. P. 439.

153 Ga. 329, reversed; certiorari denied.

ERROR to a judgment of the Supreme Court of Georgia affirming a decree for the Town of Decatur, in its suit to enjoin the plaintiffs in error from increasing the fare on a street car line in violation of a contract.

*Mr. Walter T. Colquitt,* with whom *Mr. Luther Z. Rosser* and *Mr. J. Prince Webster* were on the briefs, for plaintiffs in error.

*Mr. J. Howell Green* and *Mr. Frank Harwell* for defendant in error.

MR. JUSTICE SUTHERLAND delivered the opinion of the Court.

The defendant in error, plaintiff below, brought suit against the Power and Electric Companies, defendants below, to enjoin them from increasing the rate of fare on a line of street railway between Decatur and the City of Atlanta. Hackman and others intervened, asserting that they resided near Atlanta and used certain car lines of defendant going to and from Atlanta, upon which a seven-cent fare was exacted; and that the contract, hereinafter referred to, giving residents of Decatur a lower rate of fare, constituted an illegal discrimination against them and against the localities where they lived. They did not allege that the seven-cent fare was unreasonable; nor did they seek any change in that rate; but merely joined with defendants in praying that the contract be held void and of no effect.

The Electric Company was the owner and the Power Company the lessee of the lines involved. About the year 1902 the Electric Company owned three lines be-

tween Atlanta and Decatur. Desiring to abandon the most northerly of these lines, the company began to tear it up. Thereupon suit was brought for an injunction. The controversy was adjusted by an agreement between the company and the Town of Decatur, by which the company was allowed to remove its line and an ordinance was enacted, carrying the agreement into effect. This ordinance, which was formally accepted, bound the company " to never charge more than five cents for one fare upon its main Decatur line . . . for one passenger, and one trip upon its regular cars from the terminus of said line in the City of Atlanta to the terminus of the same in the Town of Decatur, or from the terminus of said line in the Town of Decatur to the terminus of the same in the City of Atlanta . . ." and " to grant one transfer ticket upon the payment of one full fare for the purpose of giving one continuous ride from any point within the Town of Decatur . . . to any point within the City of Atlanta, on any of its lines in said city, and vice versa." In pursuance of this agreement the company tore up, removed and abandoned the northerly line and has never since restored it.

The company maintained a five-cent fare until October, 1920, at which time it gave notice that the fare would be increased to seven cents. Prior thereto an application of the company to the Railroad Commission of Georgia for permission to make this increase had been denied, on the ground that, because of the contract, the commission was without jurisdiction. The company then sought by mandamus to compel the commission to assume jurisdiction of the question; but the application was denied by the trial court, whose ruling was affirmed by the Supreme Court of the State, in so far as it related to the line covered by the contract. The present suit against the defendants was predicated upon the foregoing facts. The contentions of the defendants were that the execution of the con-

tract was beyond the powers of the town; that permission to remove and abandon the northerly line furnished no consideration for it; that it constituted an attempt to fix fares outside the corporate limits of the town; that since it was entered into, these limits had been twice extended so as to include a portion of the main line, outside the corporate limits when the contract was entered into; and that the contract could not be applied to this additional territory without impairing its obligation, in violation of the Constitution of the United States. They further contended that, in any event, the five-cent fare should be limited to passengers entering cars at the termini of the line in Atlanta and Decatur and not to those entering at intermediate points; and that, because of changed conditions since the contract was made, the five-cent fare was confiscatory. Upon an application made by the defendants, after the disposition of the mandamus proceeding, the Railroad Commission had fixed a seven-cent fare on lines not covered by the contract and required the defendants to furnish, during rush hour periods, additional seating capacity, and, on the main Decatur and College Park routes, to operate trailers during such rush hours. The commission had also ordered that no change should be made in the existing rules and practices of the company as to transfers.

The trial court made an interlocutory order, granting a preliminary injunction, which was affirmed on writ of error by the State Supreme Court. 152 Ga. 143. Thereafter, the case having been remanded, defendants were allowed to amend their answer and crossbill in several particulars. A general demurrer to these amended pleadings was sustained in part; and a jury, impaneled to try the remaining issues, found for the plaintiff by direction of the court, upon which a final decree was entered. A second writ of error from the State Supreme Court followed. That court held that its judgment upon the first

writ of error became the law of the case and was *res judicata* and therefore precluded a further review and the decree of the trial court was affirmed. 153 Ga. 329. Deprivation of rights under the Federal Constitution was duly and properly asserted. The case is here on writ of error. From motives of caution defendants also filed a petition praying the issuance of a writ of certiorari, con- sideration of which was postponed to await the hearing on the writ of error.

Preliminarily, defendant in error insists that the deci- sion of the State Supreme Court on the first writ of error affirming the interlocutory order of the trial court, was a final adjudication from which a writ of error from this Court might have been sued out, and, hence, that we are precluded from considering the present writ of error. *Rio Grande Western Ry. Co.* v. *Stringham*, 239 U. S. 44, is cited and relied upon; but that case furnishes no support to the contention. There the trial court had adjudged the title to a piece of land to be in the defendant. Upon appeal the State Supreme Court reversed this judgment and remanded the case with directions to enter judgment awarding plaintiff title to a right of way over the land. The trial court followed this direction. Plaintiff again appealed, insisting, as it had done before, that it had title in fee simple; but the appellate court declined to consider the question, holding that the former decision concluded the court as well as the parties. This Court held that as the judgment on the first appeal disposed of the whole case on the merits and directed that judgment should be entered, it left nothing to the judicial discretion of the trial court and was therefore final. Here the first writ of error was not from a final judgment, but from an inter- locutory order granting a temporary injunction. That it did not finally dispose of the case is clear, since the trial court thereafter allowed amendments, ruled on a demur- rer, impaneled a jury, directed a verdict and entered a

final decree; and it was upon this decree that the second writ of error was brought. We are not unmindful of the ruling of the appellate court to the effect that the issues were, in fact, disposed of on the first writ of error and its powers brought to an end; but whatever may be the view of that court in respect of its own power to again consider the issues, the judgment now under review is the only one this Court can consider as final, for the purpose of exercising its appellate jurisdiction. *Great Western Telegraph Co.* v. *Burnham,* 162 U. S. 339, 343; *United States* v. *Denver & Rio Grande R. R. Co.,* 191 U. S. 84, 93; *Chesapeake & Ohio Ry. Co.* v. *McCabe,* 213 U. S. 207, 214; *Zeckendorf* v. *Steinfeld,* 225 U. S. 445, 454. While prior decisions on the subject of what constitutes a final judgment are not entirely harmonious, the rule is established that in order to give this Court appellate jurisdiction the judgment or decree " must terminate the litigation between the parties on the merits of the case, so that if there should be an affirmance here, the court below would have nothing to do but to execute the judgment or decree it had already rendered." *Bostwick* v. *Brinkerhoff,* 106 U. S. 3, and cases cited.

We hold, therefore, that the writ of error was properly brought and come to a consideration of the substantive matters presented.

1. The principal question, and the one to which the briefs and arguments are mainly directed, is, whether the agreement between the plaintiff and the Electric Company was within the powers of the town and is now valid and subsisting. This contract has been before the Supreme Court of Georgia in the course of the litigation on three distinct occasions: 149 Ga. 1; 152 Ga. 143, and (the instant case) 153 Ga. 329. That court, in carefully considered and well reasoned opinions, sustained the authority of the municipality and upheld the contract as valid and subsisting. Defendants contend that the au-

thority to fix rates devolved by the state constitution upon the General Assembly, and, therefore, that the Town of Decatur was without power to enter into a contract on that subject. When the contract was made the General Assembly had never exercised this authority and the State Supreme Court held that there was nothing in the constitution of the State which precluded the municipality from contracting as to fares; and that, while the matter was one falling within the police power, whose exercise could not be abridged by contract, it was competent for the municipality to enter into such a contract where the State had not exercised and was not seeking to exercise its police power over the subject, and that this contract would remain effective until there should be conflicting legislative action. See *Milwaukee Electric Ry. Co.* v. *Wisconsin R. R. Comm.*, 238 U. S. 174, 183. This conclusion, involving, as it does, a construction of the state constitution and laws and powers of state municipalities, is controlling upon this Court, as it has decided many times. See, for example: *Old Colony Trust Co.* v. *Omaha*, 230 U. S. 100, 116; *Claiborne County* v. *Brooks*, 111 U. S. 400, 410; *Richmond* v. *Smith*, 15 Wall. 429, 438.

On the other hand, in deciding the constitutional questions presented, this Court will determine for itself whether there is, in fact, a contract and, if so, the extent of its binding obligations, but will lean to an agreement with the state court. *Tampa Water Works Co.* v. *Tampa*, 199 U. S. 241, 242–243, and cases cited; *Freeport Water Co.* v. *Freeport City*, 180 U. S. 587, 595; *Detroit* v. *Detroit Citizens' Street Ry. Co.*, 184 U. S. 368, 386; *Milwaukee Electric Ry. Co.* v. *Wisconsin R. R. Commission*, *supra.* And considering the question in this light we see no reason to differ with that court in its view of the validity and binding quality of the contract. The contract being valid we are not concerned with the question whether the stipulated rates are confiscatory. *Southern*

*Iowa Electric Co.* v. *Chariton,* 255 U. S. 539, 542; *Paducah* v. *Paducah Ry. Co.,* 261 U. S. 267.

2. Treating the contract as valid, it is insisted that its obligation is impaired by the statutory extension of the limits of the town and the action of the court in holding the five-cent fare applicable in the added territory. While the statute does not refer to the contract or in terms make the rates applicable in the annexed territory, the necessary result of the decision of the state courts is to give it that effect, and in that way the statute, in the respect complained of, does substantially impair the obligation of the contract by adding to its burdens. *Detroit United Railway* v. *Michigan,* 242 U. S. 238, 247–248; *Columbia Railway, Gas & Electric Co.* v. *South. Carolina,* 261 U. S. 236.

3. The state statute of August 23, 1907, Civil Code, § 2662, extends the power of the Railroad Commission to street railroad companies, but contains a proviso to the effect that it shall not be construed " to impair any valid, subsisting contract now in existence between any municipality and any such company." It is insisted that this proviso brings about an arbitrary classification, in violation of the equal protection clause of the Fourteenth Amendment, because it subjects future contracts to the power of the Commission while exempting existing contracts therefrom. But it is not shown that the classification in fact is unreasonable and arbitrary and, under the decisions of this Court, we cannot say that it is obnoxious to the constitutional provision. *Arkansas Natural Gas Co.* v. *Arkansas Railroad Commission,* 261 U. S. 379, and cases cited.

4. We cannot agree with the contention of defendants that the order of the commission, directing that no change be made in the matter of the issuance of free transfers is open to constitutional objection. The order of the com-

mission went no further than to direct a continuance of a practice which, so far as the record discloses, was not beyond the terms of the contract providing specifically for such transfers.

Neither are we able to say that the order of the commission, directing the defendants to provide additional seating capacity on some of its lines and trailers upon the line covered by the contract, was beyond its ordinary power to require adequate service. There is nothing in the contract with which the order conflicts, and such service naturally would seem to be implied, in the absence of a provision to the contrary.

5. Other contentions advanced by defendants we find so clearly lacking in merit that we dismiss them without special consideration.

It results from the foregoing that the judgment below, in so far as it makes applicable the contract rates within the annexed territory cannot be sustained. The contract rates apply only to the Town of Decatur, as it existed when the contract was made. To apply them to additional territory is to impose a burden upon defendants outside the contract. We find no other error; but, upon the ground stated under paragraph 2, the decree of the State Supreme Court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

*Reversed.*

*Writ of certiorari denied.*