GEORGIA POWER COMPANY *v.* CITY OF DECATUR.

No. 6849. APRIL 15, 1929. ADHERED TO ON REHEARING, JUNE 28, 1929.

*Colquitt & Conyers* and *Hugh Burgess,* for plaintiff in error.
*Alexander & McLarty,* contra.

STARK, J. This suit had its origin in the decision of the City of

Decatur in 1925 to pave its streets in accordance with an act of the legislature of Georgia, and to assess certain of the expenses of paving against the street-railway. On July 9, 1925, plaintiff in error notified the City of Decatur that unless it was relieved of the burden of this paving expense, it would be "willing to surrender to the City of Decatur the franchise for this line and remove the tracks from the streets." The city refused this proposition. On September 26, 1925, a communication was addressed to the mayor and commissioners of Decatur, stating, among other things, that the "Georgia Railway and Power Company, as the lessees thereof, concurring herein, hereby formally surrenders the said permits and franchises granted by the Town and City of Decatur for the construction and operation of the said electric railway hereinbefore referred to." Attached to this notice was a certified copy, or copies, of the resolutions by the board of directors of the Georgia Railway and Electric Company and the Georgia Railway and Power Company. The notice recited when the discontinuance would be put in operation. On September 28, 1925, the City of Decatur by proper resolution refused to accept the surrender of the said franchise, or permit, tendered to it by the street-railway companies, as it would not be to the interest of the city to accept the same. The City of Decatur then filed this equitable petition against the Georgia Railway and Electric Company and the Georgia Railway and Power Company, to prevent the abandoning of these lines, setting up the contract made and entered into between the city and said street-railway companies. Pending this litigation the Georgia Railway and Electric Company and the Georgia Railway and Power Company have been consolidated and merged into the Georgia Power Company. In further discussion of this case we will refer to the ordinance of March 3, 1903, of the City of Decatur and the contract entered into in pursuance thereof, dated April 1, 1903, as if made with the Georgia Power Company instead of Georgia Railway and Electric Company and Georgia Railway and Power Company.

It would seem that every attack that could be made upon this contract of April 1, 1903, has been made by the Georgia Power Company. When it was before this court the last time (*Georgia Railway & Power Co.* v. *Decatur,* 153 *Ga.* 329 (supra)), it was stated by Wright, Judge: "While the plaintiff in error now insists

that some ten distinct points of attack upon the validity of the contract are made in the present appeal that were not made in the mandamus case (149 *Ga.* 1), it is not and can not be insisted that the identical questions of law were not involved upon the first hearing of the interlocutory injunction (152 *Ga.* 143, 108 S. E. 615) as are now involved upon this second appeal." We have examined the original record in this court when the case was here before, that we might again have before us the "ten distinct points of attack upon the validity of the contract" referred to in the decision; and every controlling issue was distinctly made and passed upon in that case that is made in the case now before us, unless it be the offer to surrender back to Decatur the franchise, or permit. In paragraph 37 of the company's answer it said: "Defendants show and allege that said so-called contract is indefinite as to the time it is to run; said provision contains no definite or fixed time during which a fare of five cents is to be charged, and because of said indefiniteness said so-called contract provision is revokable on notice, and as shown by exhibit "D" attached to the petition defendants have served notice on petitioner, terminating said contract on the twentieth day of October, 1920, and so-called contract, if it ever had any force and effect, is now terminated." The company further set out in its answer and cross-bill a copy of the order of the Railroad Commission of the State of Georgia, dated September 22, 1920, among other things stating: "the five-cent fares now in effect on the main Decatur line, . . contracted for under vastly different conditions than now exist, are not fairly compensatory, and as to the patrons of the company on other routes, and on intermediate territory on these routes, are discriminatory. This Commission is without power to increase them."

"Defendants further allege that provisions, or contracts, with reference to rates, or fare, being with reference to a legislative or police power, must be for a definite term, not grossly unreasonable, and that where the provisions as to rates are indefinite it is revokable on notice under changed conditions."

The validity of said contract and the terms thereof have been upheld by this court three different times, and by the Supreme Court of the United States. *Georgia Railway & Power Co.* v. *Railroad Commission,* 149 *Ga.* 1 (98 S. E. 696, 5 A. L. R. 1); *Georgia Railway & Power Co.* v. *Decatur,* 152 *Ga.* 143 (108 S. E.

615) ; Georgia Railway & Power Company *v.* Decatur, 262 U. S. 432 (43 Sup. Ct. 613, 67 L. ed. 1074). Now that the Georgia Power Company can no longer attack the contract, it proposes to abrogate the terms thereof, by surrendering its permit, or franchise, to the City of Decatur, and tear up and remove its rails; and the notice already referred to was given to the City of Decatur by the Georgia Power Company of its intention to surrender the franchise and cease operation. It was then that the present injunction was filed by the City of Decatur against the Georgia Power Company. We do not deem it necessary in this case to go back of the litigation between the City of Decatur and the Power Company in 1902; but the fact of said litigation and the terms of the settlement of the same that was finally consummated in the ordinance of March 3, 1903, and the contract of April 1, 1903, are germane and very material to the decision of this case. In the negotiations leading up to the settling of the litigation, and the contract made in pursuance thereof, the Power Company was "urging as a reason for such action by Mayor and Council that, if allowed to take up and discontinue said line known formerly as Atlanta Railway Company, said Georgia Railway and Electric Company could and would give to the citizens of said town of Decatur better street-car facilities upon another parallel line of street-railway between the City of Atlanta and the Town of Decatur, owned by said Georgia Railway and Electric Company." The terms of this ordinance and contract in pursuance thereof show that it was to be a permanent operating contract between the street-railway company and the City of Decatur. In section 2 of said ordinance and contract it is stipulated that the Georgia Railway and Electric Comapny, its successors and assigns, whether by contract or by operation of law, shall be bound to do the following things: . . "To never charge more than five cents for any fare." And then in paragraph 4, providing for the double-tracking in the City of Decatur with reference to this loop: "the loop already described in the Town of Decatur being considered a double track;" and further stipulating: "Which said double track, when completed, shall be maintained in a substantial, safe, and expeditious manner, and shall be operated with cars and rolling-stock kept in a safe and comfortable condition. Permission to construct said double track in the Town of Decatur is hereby granted."

To allow the plaintiff in error to surrender its franchise and permit and tear up its track would destroy the very terms of the contract itself. It is not so much the franchise that we are dealing with, but the specific contract made in pursuance thereof. The terms of it are that the company will "never" charge more than five cents for one fare, and that it will maintain the track in a substantial and safe manner and operate it with rolling-stock. When this contract was before the Supreme Court of the United States (262 U. S. 438, supra), that court said with reference to the duration of this contract that "this contract would remain effective until there should be conflicting legislative actions." Under the constitution (Code, § 6448), all that towns and cities have to give to the construction of passenger street-railways within the limits of the same is the consent of the corporate authorities. Regardless of whether the assignments of error in the bill of exceptions raise the question of the expiration of the charter of the Collins Park and Belt Railroad Company, so that it can be considered by this court, it is clear that the City of Decatur, under said contract, could not deny that it had given its consent to the construction of this street-railway system upon its streets. The consent, if not expressly given in this contract, is necessarily implied. All the permit necessary to the use of the streets of Decatur by the Georgia Power Company is either expressly granted or necessarily implied from the terms of said contract. This permit was given to the predecessor of the plaintiff in error. The line sought to be abandoned in the City of Decatur is a part of a large street-railway system operated by the Georgia Power Company, and the company seeks to abandon the part of this line in Decatur. This, under the terms of its contracts, it can not do. Fort Smith Light & Traction Co. v. Bourland, 267 U. S. 330 (45 Sup. Ct. 349).

The case of *Morris* v. *Atlanta Nor. Ry. Co.,* 160 *Ga.* 775 (129 S. E. 68), if it is authority at all upon the controlling question here, does not strengthen the position of the plaintiff in error. The court in that case quoted approvingly what was said in *Coffee* v. *Gray,* 158 *Ga.* 218 (122 S. E. 687), as follows: "Apart from statute, or express contract, the people who put their money in a railroad are not bound to go on with it at a loss, if there is no reasonable prospect of profitable operation in the future." But in the instant case it appears that there was an express contract, and

as a part·of the consideration of that contract the railway company was permitted to tear up the track of another street-railway which was then serving the City of Decatur and would have continued to serve it. Bullock v. Florida, 254 U. S. 513 (41 Sup. Ct. 193, 65 L. ed. 380); Brooks-Scanlon Co. v. Railroad Commission, 251 U. S. 396 (40 Sup. Ct. 183). The trouble with the plaintiff in error is, it has made an "express contract" with Decatur not to charge more than five cents for one fare. We can take judicial cognizance of the deflation in the value of the dollar, as contended by plaintiff in error, but how can that help the Georgia Power Company under the terms of its contract? And the Supreme Court of the United States said, with reference to this rate contract: "The contract being valid, we are not concerned with the question whether the stipulated rates are confiscatory." The parties having entered into an express contract as to what the fare should be, it is immaterial whether it is confiscatory or discriminatory. Having held, according to the ordinance of the City of Decatur of March 3, 1903, and the express contract in pursuance thereof, entered into April 1, 1903, that the Georgia Power Company can not surrender its franchise, or permit, and abandon its line and tear up the tracks from the street, the other questions involved in this case were decided when this contract was before the court in *Georgia Railway & Power Co.* v. *Decatur,* 153 *Ga.* 329 (supra).

*Judgment affirmed. The Presiding Justice and all the Judges concur.*