MUNICIPAL CITY OF SOUTH BEND, INDIANA *v.* BLUE LINES, INC.

[No. 27,604. Filed January 13, 1942. Rehearing denied February 11, 1942.]

*Nathan Levy* and *Joseph A. Roper,* both of South Bend, for appellant.

*Roland Obenchain, Roland Obenchain, Jr., Vitus G. Jones, Paul M. Butler,* and *Francis Jones,* all of South Bend, for appellee.

SHAKE, C. J.—The sole question presented by this appeal is whether the appellee is required to pick up and transport garbage in areas annexed to the City of South Bend subsequent to the effective date of a contract between the city and the appellee's assignor. The complaint was filed under the

Declaratory Judgments Act (§ 3-1101 et seq., Burns' 1933, § 438 et seq., Baldwin's 1934) and the cause was submitted as an agreed case, pursuant to § 2-2201 to § 2-2203, Burns' 1933, § 362 to § 364, Baldwin's 1934. The trial court concluded that the appellee is not so obligated and rendered judgment to that effect. On this state of the record, there are no presumptions in favor of the action of the trial court, and it is our duty to consider the case as if we were trying it in the first instance. *Day* v. *Day* (1885), 100 Ind. 460; *Warrick Building and Loan Association* v. *Hougland* (1883), 90 Ind. 115.

The parties rely exclusively upon the preliminary proceedings on the part of the city; the contract; the annexation ordinances; and their agreement as to certain additional facts. These documents are too lengthy to be set out in full, but we shall state the substance of such parts of them as are pertinent to the inquiry.

The board of public works and safety of the City of South Bend adopted specifications as a basis for receiving bids and awarding a contract. The specifications provided that they should be incorporated in and made a part of the contract by reference; that the subject of the proposed contract would be the collection and removal of garbage, weekly, or bi-weekly during certain months, from all apartments, residences, and private dwellings throughout the city of South Bend to a farm at least three miles beyond the city limits, where it would be fed to hogs; that the bidder should state the location of such farm in his bid, and that if this was changed the contract price might be adjusted by the parties, if they could agree, and, if not, then by arbitration; that each bidder should satisfy himself, by personal examination of the city, as to the nature and

amount of work to be done and that he might not there-after assert that there was any misunderstanding with respect thereto; that there should be submitted with each bid a map of the city divided into districts, and indicating the collection routes in each district, which should be subject to the correction and approval of the board of public works and safety; that the successful bidder should conform to all the laws of the United States and of the State of Indiana, to all present or future ordinances of the City of South Bend relating to the subject-matter of the contract, and to all rules and regulations adopted by the city covering the collection and disposal of garbage, not inconsistent with the contract. The city reserved the right to build an incinerating plant or provide other means of garbage disposal, and, in such event, to cancel the contract on 12 months' notice.

The appellee's assignor was the successful bidder, and on August 18, 1939, the city entered into a contract with him, by the terms of which he obligated himself to collect and haul garbage in accordance with the above specifications for the period of 5 years, beginning on January 1, 1940, for an agreed consideration of $29,940 per year. On August 27, 1939, the contract was assigned to the appellee, with the consent of the common council of the city. By ordinances approved on March 12, 1940, March 25, 1941, and May 28, 1941, three additions were annexed to South Bend, and the controversy is whether the appellee is obligated, under its contract, to serve these territories.

The appellee contends, in support of the judgment in its favor, that the obligation assumed by it must be considered in the light of the conditions existing at the time the contract was entered into, and that to require the appellee to service the subsequently annexed addi-

tions would increase the burden of performance and impair the contract. Our attention is called to clause 13 of § 48-1407, Burns' 1933, § 11432, Baldwin's 1934, by which municipalities are given jurisdiction over the collection and removal of garbage within four miles of the corporate limits, and the appellee says that had it been contemplated that the scope of the service might be extended beyond the city limits, as they existed when the contract was entered into, it is reasonable to assume that provision would have been made for such a contingency. It is also urged by the appellee that the provisions of the specifications and contract requiring compliance with future ordinances relate to the exercise of the city's police power, and have no application to annexation proceedings.

The appellant takes the position that the contract is not ambiguous; that the appellee assumed to serve the City of South Bend as a legal entity, rather than the territory within the corporate limits thereof; that it was charged with knowledge of the power of the city to increase its area and specifically contracted to conform to future ordinances; that it is no more entitled to the relief sought than for an increase in the number of residence units within the corporate limits of the city; and that the contract, being for the public benefit, is to be construed liberally in favor of the city and strictly against the appellee.

Both parties have urged us to apply as controlling precedents a number of decisions involving facts more or less similar to those presented by the case at bar; but we prefer to approach the problem from the standpoint of the fundamental rules for the interpretation of contracts that have been developed through the years. The rules which we consider applicable have been stated as follows: (1) Words will

generally be construed most strongly against the party who used them; and (2) a contract will, if possible, be construed so as to render it reasonable rather than unreasonable. Clark on Contracts, Hornbook Series, 3rd. Ed. § 219, p. 503.

The contract followed the specifications, which were dictated by the city, and provided that bids would be received for the collection and disposal of garbage "throughout the city of South Bend." This warrants the application of the first rule stated above, and we must hold that the phrase, "throughout the city," must be construed most strongly against the appellant. *Illinois Pipe Line Co.* v. *Fitzpatrick* (1934), 207 Ind. 1, 188 N. E. 771; *Lechner* v. *Strauss* (1912), 50 Ind. App. 414, 98 N. E. 444. The rule is as applicable to municipal corporations as to individuals. *Evelyn Building Corp.* v. *City of New York* (1931), 257 N. Y. 501, 178 N. E. 771; *Silas Mason Co., Inc.* v. *City of New York* (1937), 249 App. Div. 538, 293 N. Y. S. 331.

It is inferable from the evidence that garbage has some use value and we think it safe to say that had the appellee seen fit to claim the right to collect and remove the garbage from the annexed additions the city would have been in no position to object to its doing so. It seems equally apparent that the city's object in entering into the contract was to provide a comprehensive service at a minimum cost and to fix responsibility therefor in a single agency. If the appellee may arbitrarily refuse to service such annexed areas as are the natural result of normal growth and development, the city may be put to a choice of maintaining its corporate boundaries as they were when the contract was made or assuming the disproportionate expense incident to rendering a similar service in relatively small and remotely located areas. The first choice

would retard the operation of a sound public policy and the second would place an unreasonable burden on the city, both of which contingencies ought to be avoided, if possible.

On the other hand, the substantial consideration paid by the city suggests that the contract price bears some rational relationship to the *quantum* of service to be rendered, and that there ought to be some reasonable limitation upon what the appellee may be required to do under the contract. Conceivably, the city may double or treble its area, housing units, and population by annexation proceedings, and may even absorb neighboring municipalities. It would certainly be quite beyond the contemplation of the parties that the city might by such unforeseen annexations, wholly in excess of those reasonably to be anticipated, force the appellee into an unconscionable situation.

It is concluded that the appellee not only assumed the burden of serving the territory embraced within the corporate limits of the City of South Bend, as these existed at the time the contract was executed, but that it is also bound to extend similar service to such subsequently annexed areas as may be said to be the result of the city's reasonable growth and development. The latter is as much the appellee's risk as an increase in the population and housing units within the corporate limits. Upon this hypothesis we proceed to a consideration of the evidence by which the nature and extent of the 1940 and 1941 annexations may be characterized.

The agreement of the parties recites that during 1940 and 1941 industrial activities were greatly increased in and about South Bend, resulting in a substantial shortage of housing facilities in the city and in adjacent areas; that approxi-

mately 10 new dwellings have been erected and 30 or 40 additional houses are under construction in one of the new additions; and that the "Federal Government plans the erection of many hundreds of dwelling houses at an expenditure of more than one million dollars" in another of said additions. A map of the city, on which the relative size and location of the annexed additions have been indicated, is found in the record but neither the total area of the city nor the areas of the new additions are disclosed. A comparison of the 1940 and 1941 additions with the city as a whole supports the inference that the area of the latter was not increased more than 4% by the three annexations. We judicially notice that according to the United States census reports the population of South Bend declined from 104,193 in 1930 to 101,268 in 1940; and that during the same period the population of the metropolitan district surrounding the city, consisting of the adjoining townships, increased from 42,376 to 45,754. Thus during the 1930-1940 decade the city proper suffered a population loss of 2.8 per cent while the surrounding area had a gain of 8 per cent.

Taking into account that the population changes both within and without the city have been fluctuating; that the aggregate area of the annexed additions is relatively small; that only 40 or 50 additional housing units have actually been brought into the city; and that the proposed Federal project is, at most, only a probability, we cannot say that the annexation ordinances imposed a burden upon the appellee that should not have been reasonably anticipated by the parties to the contract. It would be *obiter dicta* for us to indicate at this time whether the appellee might claim the right to continue to serve the territory within the corporate limits or whether his remedy would be to

repudiate the entire contract, if future annexations impose burdens in excess of those which should have been reasonably anticipated.

Reversed, with directions to set aside the judgment and to enter a new judgment in accordance with this opinion.

NOTE.—Reported in 38 N. E. (2d) 573.

## ON PETITION FOR REHEARING.

SHAKE, C. J.—The appellee has pressed us to consider and apply the rules stated in the following cases: *Toronto Ry. Co.* v. *City of Toronto* (1906), 37 Can. S. C. 430, affirmed Privy Council, Law Reports Appeal Cases (1907), p. 315 (Eng.); *Turners Falls Fire Dist.* v. *Millers Falls etc.* (1905), 189 Mass. 263, 75 N. E. 630; *Georgia Ry. Co.* v. *Decatur* (1923), 262 U. S. 432, 67 L. Ed. 1065, 43 S. Ct. 613; and *Georgia Ry. Co.* v. *College Park* (1923), 262 U. S. 441, 67 L. Ed. 1074, 43 S. Ct. 617. The above cases involve rights and obligations arising out of franchises, which are in the nature of special privileges conferred by the government, while the contract with which we are concerned is one entered into by the city in its proprietary capacity.

In its petition for a rehearing the appellee presents two propositions. It is first asserted that "As construed by this court, the annexation ordinances add to appellee's burden of performance and thereby substantially impair the obligation of appellee's contract." We did not construe the annexation ordinances; we construed the contract. An ambiguous contract is not impaired by a construction which gives effect to the intentions of the parties.

It is next asserted that "If the true theory upon which the case ought to be tried is whether the areas

annexed were only the 'city's reasonable growth,' the case should be remanded for further proceedings." In support of the latter proposition the appellee submitted a supplemental statement of facts reciting that the federal project referred to in the principal opinion has been completed and that it has dwelling units for the accommodation of not less than 350 families.

The appellant responded with another supplemental statement of facts. From the latter it appears that by the annexation ordinances the area of South Bend was increased from 19.82 to 20.44 square miles; and that of the 350 dwelling units provided in the federal project 93 are in the annexed areas, of which only 33 are occupied. The appellee has since admitted the facts stated in the appellant's supplemental showing. We are not persuaded that we would be justified in ordering a new trial.

The petition for rehearing is denied.

NOTE.—Reported in 39 N. E. (2d) 439.