GEORGIA POWER COMPANY *v.* CITY OF DECATUR.

700

No. 7349. July 2, 1930.

*Colquitt & Conyers, Hugh Burgess,* and *P. S. Arkwright Jr.,* for plaintiff in error.

*Robert Ramspeck, Branch & Howard,* and *Bond Almand,* contra.

Persons, J. Acting under its charter powers as are conferred by the amendatory acts of the General Assembly (Ga. L. 1919, p. 934; 1924, p. 534), the City of Decatur through its commissioners passed ordinances in conformity thereto in the interest of public travel and street drainage, providing for the paving of East Ponce de Leon Avenue in said city, along and on which are located the street-railway tracks of the Georgia Railway and Electric Company, a corporation, operated under a franchise granted by said City. Said street-railway system was then in the control of and was being operated by the Georgia Railway and Power Company, a corporation, by virtue of a lease for the term of 999 years. In accordance with said authority conferred upon it by the General Assembly, the City of Decatur assessed against the Georgia Railway and Power Company the cost of paving that portion of said street between its tracks and for two feet on each side thereof, which the company refused to pay; whereupon in accordance with said legislative authority the city clerk issued execution against the company, directing the city marshal "that, of the goods and chattels, lands and tenements of the Georgia Railway & Power Co., a corporation of the State of Georgia, you cause to be made, by levy and sale thereof," the amount assessed as costs of said paving. This fi. fa. was levied by the city marshal on certain land lying in the City of Decatur but not located on the street improved, and on which is erected a subpower station, as the property of the defendant in fi. fa. The Georgia Power Company filed with the marshal its statutory claim, which was returned to the superior

court of DeKalb County for trial. An equitable amendment in aid of said claim was allowed, in which the claimant seeks to establish its title to the property levied upon, and to avoid the liability of the paving assessment, on the grounds: (a) that the fi. fa. is not issued or proceeding against any street-railway company which has a track running along or across the street paved; (b) that the tracks on said street paved are the property of the Georgia Railway & Electric Co., and not of the Georgia Railway & Power Co.; and that the legislative authority in question confers on the city no right to levy its fi. fa. for said paving on the property of either of those companies, for the reason that the property of the street-railway company located in said street received no benefit from said paving, and only property which is directly benefited by a street improvement can be held subject to the cost of a paving assessment; (c) that if it should be held that such legislative authority confers the power on said city to collect the costs of said paving as assessed out of the street-railway company's property generally, whether benefited thereby or not, said charter amendments by the legislature providing for the assessing of the costs of said paving, and the ordinances of said city enacted thereunder for that purpose, are unconstitutional and void for the reason that the same are in violation of (1) the due-process clause of the 14th amendment to the constitution of the United States, and of the constitution of Georgia as set forth in the Civil Code (1910), §§ 6358, 6359, (2) the inhibitory clause of the constitution of Georgia against the taking of private property for public use without adequate compensation being first paid, as is set forth in the Civil Code (1910), § 6388, and (3) the uniform-tax provisions of the constitution of Georgia as set forth in the Civil Code (1910), § 6553. In this amendment it is prayed that the said acts of the legislature amending the charter of said city, and the ordinances passed thereunder by it, assessing said paving, be construed and declared null and void, and that the city be enjoined from enforcing said fi. fa. as well as any proceeding under and by virtue of said paving assessment generally against any of the three companies named above.

The city filed its answer denying the unconstitutionality of the legislative acts, and asserting that by virtue of its charter powers and the ordinances passed thereunder, ordering said paving and

making said assessment, the fi. fa. on said property is a binding lien thereon as well as upon all the property of the street-railway company owning the tracks on the street paved; that the tracks on said street are the property of the Georgia Railway & Electric Co., but that by virtue of the lease executed by it with the Georgia Railway & Power Co., the operating company, said lessee became bound and liable unto the lessor during said lease for all debts, duties, and obligations of the Georgia Railway & Electric Co., which lease was in effect at the time the street improvements were made, for which the fi. fa. was issued, and the Georgia Railway & Power Co. under that lease was ultimately liable for said assessment; that since the improving of the street the Georgia Power Co., the claimant, has, by virtue of a certificate of incorporation issued by the Secretary of State under the provisions of the Civil Code (1910), §§ 2607-2609, become a consolidated corporation composed of the Georgia Railway & Electric Co., the Georgia Railway & Power Co., and other constituent corporations, under an agreement entered into between said corporations, and as such became "subject to all the duties, liabilities, debts, and obligations of each of the constituent corporations," the agreement stipulating that "all debts, liabilities, and duties of the constituent corporations shall thenceforth attach to the consolidated corporation and may be enforced against it to the same extent as if the debts, liabilities, and duties had been incurred or contracted by it;" that the effect of said consolidation was to preserve all liens against the properties of the constituent corporations passing under said consolidation to the Georgia Power Co., and in legal effect the Georgia Power Co. is now the Georgia Railway & Power Co. and the Georgia Railway & Electric Co. combined and consolidated; and that the assessment as made is therefore binding on all three of said corporations. Prayer is made that the court, in the exercise of its equity powers invoked by the equitable claim, so mold its decree "to the end that the Georgia Power Co. be required to pay the assessment which is a legal charge against the property which it acquired under said consolidation and constitutes a debt or obligation which by its charter it became liable therefor." It is also alleged that because the track of the street-railway company along the street paved in said city is a part of the main line of the street-railway system of the claimant, running from the City of Atlanta through the City of Decatur, it can

not be levied upon, seized and sold, as it is devoted to the service of the public; and a prayer is made for "a general judgment against the Georgia Power Co., the consolidated corporation," and for subjecting to said judgment "any property that formerly belonged to the constituent corporation against which the assessment should have been made which is not devoted to public uses, and against any income from any property belonging to said constituent corporation;" and that the claimant as such consolidated corporation be decreed "liable for the debts and obligations of the Georgia Railway & Power Co. and the Georgia Railway & Electric Co., and especially the debt or obligation represented by the assessment on which the fi. fa. in this case was issued, and that such assessment should be paid by the Georgia Power Co., and that the judgment be collectible out of any assets of the Georgia Railway & Electric Co. and the Georgia Railway & Power Co., and that the decree shall provide for the collection of said judgment by execution and by such other legal process as may be necessary in order to enforce the payment of said obligations; and that plaintiff have such other and further relief in the premises as it may be entitled to under the principles of law and equity."

The case went to trial on the pleadings as thus made; and after all of the evidence together with an agreed statement of facts had been introduced, a motion was made by each side for direction of a verdict in its favor. The court directed a verdict against the claimant and in favor of the city, finding that at the time of the improving of the street the Georgia Railway & Power Co., as the lessee of the street-railway system, operated the same, of which the track on the street paved is a part, under which lease the lessee assumed the payment of said paving assessment; and that subsequently the Georgia Power Co. became a consolidated corporation composed of said constituent companies and their assets and franchises, and as such assumed "all debts, liabilities, and duties of said companies;" that said assessment had been made at the time the consolidation agreement was made, and the Georgia Power Co. assumed and is liable for the assessment upon which the fi. fa. was issued; that said assessment should be paid by the said Georgia Power Co.; and that the City of Decatur have judgment against the Georgia Power Co. in the sums of $13,444.66 principal and $2,771.09 interest. On this verdict decree was rendered for said sums, including costs, directing

"that said judgment shall be enforced against any property or assets of the Georgia Railway & Electric Co. and the Georgia Railway & Power Co., received by the Georgia Power Co. from any of the assets or properties of the Georgia Railway & Electric Co. and the Georgia Railway & Power Co., received by the Georgia Power Co. under said consolidation agreement, with the rank and priority of payment next in point of dignity to liens for taxes." The Georgia Power Co. filed exceptions pendente lite and a motion for new trial, assigning error on the grounds set forth in the amended equitable plea in aid of its claim, and on the further grounds that (a) the verdict as directed was not germane to the issues in the claim case, which were whether or not the property levied upon is subject to the execution in question; and (b) that the issues in the claim case could not be so changed as to authorize the rendering of a general verdict of liability and a judgment therefor against the claimant. The motion for new trial was overruled, and the claimant excepted.

■ That the General Assembly of this State has the power to authorize a municipality therein to pave its streets and to assess and enforce the cost and collection of a special tax assessment against a street-railway company whose tracks occupy its streets, for the cost of paving the area occupied by its tracks and for a reasonable distance outside of its tracks located in a street ordered paved under such legislative authority, is established law. *City of Atlanta* v. *Gate City St. Ry. Co.,* 80 *Ga.* 276 (4 S. E. 269) ; *Georgia Ry. &c. Co.* v. *Atlanta,* 153 *Ga.* 335 (113 S. E. 420) ; *Georgia Ry. &c. Co.* v. *Decatur,* 29 *Ga. App.* 653 (116 S. E. 645). The power of the legislature over the subject of special taxation against street-railway companies for local improvements is generally recognized, and is stated as follows : "It is generally held that the right of occupancy of a portion of the streets of a municipality by a street-railway corporation is property which is benefited by a street improvement to the extent of the space occupied by its road-bed and tracks, which renders the same liable for its proportionate share of its costs, just as the abutting-property owner is liable. The road-bed of a railway company in a public street has in a number of instances been declared subject to a special assessment, and the same is true of the franchise and right of way of an elevated railroad company. The easement of a street-railway company in a public street has been

held to special assessment under a statute providing that any street-railway company should be liable for the cost of paving the portion of the street occupied by it, and that such cost should be a lien upon its property." 25 R. C. L. 120, § 36; 44 C. J. 532, § 2894; Storrie v. Houston Ry., 92 Tex. 129 (46 S. W. 796, 44 L. R. A. 716) ; City of Shreveport v. Prescott, 51 La. Ann. 1895 (26 So. 664, 46 L. R. A. 193) ; Chicago v. Baer, 41 Ill. 306; Chicago City v. Chicago, 90 Ill. 573 (32 Am. R. 54) ; Cicero &c. St. R. v. Chicago, 176 Ill. 501 (52 N. E. 866) ; Kuehner v. Freeport, 143 Ill. 92 (32 N. E. 372, 17 L. R. A. 774) ; Freeport St. Ry. Co. v. Freeport, 151 Ill. 451 (38 N. E. 137) ; Lightner v. Peoria, 150 Ill. 80 (37 N. E. 69) ; Washington &c. R. Co. v. Dist., 108 U. S. 522 (27 L. ed. 912, 2 Sup. Ct. 865) ; West Chicago v. Street R., 178 Ill. 339 (53 N. E. 112) ; Parmalee v. Chicago, 60 Ill. 267; City of Durham v. Durham Pub. Serv. Co., 182 N. C. 333 (109 S. E. 40) ; Durham Pub. Serv. Co. v. Durham, 261 U. S. 149 (67 L. ed. 580, 43 Sup. Ct. 290).

The General Assembly by virtue of acts approved August 18, 1919, and August 12, 1924 (Ga. Laws 1919, p. 934; 1924, p. 534), amending the charter of the City of Decatur, conferred full power and authority upon said city, in the discretion of its commissioners, to pave any street therein, and, when street-railway tracks are located in a street ordered paved, to assess the cost of paving that portion of the street between and for two feet on each side of said tracks against the company owning the tracks and its property located in said municipality, and used in the operation of its street-railway system therein.

It is not contended that the authorities of the City of Decatur did not fully comply with the provisions of said charter as amended in the enacting of the ordinance requiring the paving of East Ponce de Leon Ave., therein, and in ordering the levying against the street-railway company of the cost of paving that portion of the street between and for two feet on either side of its tracks; but appellant insists that the city acting under said charter as amended can not enforce the collection of the paving costs assessed against the railway company's property generally, for the reasons (1) that the property of the company located on the said street received no benefits from the improvements, and (2) that the only property of the company that can be held liable for the paving assessment, if

any, is that which is located on the street improved. The power of determining the benefits to be received by the property of the street railway company from local improvments is a legislative one; and in this case, by virtue of said charter as amended, this authority is vested solely in the city commissioners, who in the exercise of said authority determined the same, and the question of benefits by virtue of said improvements to the property of the railway company will not be inquired into by the courts unless it is made to appear that there has been an arbitrary abuse of such authority. *Georgia Ry. & Electric Co.* v. *Atlanta,* 144 *Ga.* 722 (3) (87 S. E. 1058) ; *Speer* v. *Athens,* 85 *Ga.* 49 (3-a) (11 S. E. 802, 9 L. R. A. 402) ; *Georgia Ry. &c. Co.* v. *Decatur,* 137 *Ga.* 537 (73 S. E. 830, 40 L. R. A. (N. S.) 935) ; L. & N. R. Co. *v.* Barber &c. Co., 197 U. S. 430 (25 Sup. Ct. 466, 49 L. ed. 819) ; Kansas City So. R. *v.* Road Imp. Dist., 266 U. S. 379 (69 L. ed. 335, 45 Sup. Ct. 136) ; Branson *v.* Bush, 251 U. S. 182 (64 L. ed. 245, 40 Sup. Ct. 113) ; Hancock *v.* Muskogee, 250 U. S. 454 (63 L. ed. 1081, 39 Sup. Ct. 528) ; Milwaukee Electric R. &c. Co. *v.* Wisconsin, 252 U. S. 100 (64 L. ed. 476, 40 Sup. Ct. 306) ; City of Durham *v.* Durham Pub. Serv. Co., supra; Durham Pub. Serv. Co. *v.* Durham, supra.

The burden is upon the appellant who attacks the exercise of such authority in ordering the improvement, to establish the fact that the same was abused. Kansas City So. R. Co. *v.* Road Imp. Dist., supra. Can it be said that the appellant has successfully carried this burden? What is the proof offered in support of the attack? The record discloses that when the city decided to order the paving in question, due notice was given to those concerned thereby, as is provided in the amendatory acts, and that the Georgia Railway & Power Co., the lessee of the railway franchise and system in said municipality, the same being owned by the Georgia Railway & Electric Co., filed, through its president Mr. Arkwright, a written protest against the assessing of any portion of the costs of the proposed paving against either the owner company or the leasing company, for the reason that his company was operating the railway line from Atlanta to Decatur under a rate fixed by contract with said municipality, dated March 3, 1903, limiting the rate of fare from and to said municipalities to a charge of five cents for each full fare, on payment of which one transfer ticket is given; and that it is impossible to earn operating expenses

thereunder; and that if any portion of said paving costs are assessed against either of said companies, the same would amount to a confiscation of their property. In support of this protest he offered on behalf of said companies to surrender to the City of Decatur the franchise which it had granted to the railway company and under which the same was being operated. On the trial of this case Mr. Arkwright, who had also become the president of the Georgia Power Co., the claimant, testified that so long as said rate contract is of force it is impossible to operate said railway line at a profit. He again offered to surrender to said municipality said franchise; and inasmuch as the total value of the railroad tracks of the street-railway company in said municipality was not equal to the amount of the paving assessment levied, he offered also to surrender said tracks to the city. He testified that the paving of the street did not benefit any property of the railway company thereon, or elsewhere located in said city; that the paving of the street in question is a public benefit.

The record discloses that for several years the street-railway companies operating the railway system under said franchise in the municipality of Decatur have resorted to various efforts seeking to abrogate the terms of said rate contract without the consent of the municipality, and to surrender the franchise requiring the operation of said railway system, all of which efforts this court has held to be illegal, rendering therein repeated decisions adjudicating the validity and binding effect of said contract on the railway company, and requiring it to render the public service imposed upon it by said franchise. These several cases are reported as *Georgia Ry. &c. Co.* v. *Railroad Commission*, 149 *Ga.* 1 (98 S. E. 696, 5 A. L. R. 1); *Georgia Ry. &c. Co.* v. *Decatur*, 152 *Ga.* 143 (108 S. E. 615); *Georgia Ry. &c. Co.* v. *Decatur*, 153 *Ga.* 329 (111 S. E. 911); *Georgia Power Co.* v. *Decatur*, 168 *Ga.* 705 (149 S. E. 32). In sustaining the decision of this court in the case reported in 153 *Ga.* 329, the Supreme Court of the United States held: "Where a street-car company has made a binding contract with a municipality for rates, the Supreme Court of the United States will not consider the question whether or not they are confiscatory." Georgia Ry. &c. Co. *v.* Decatur, 262 U. S. 432 (5) (43 Sup. Ct. 613, 67 L. ed. 1065). On appeal of the Georgia Power Co., the Supreme Court of the United States, in a decision delivered May 19, 1930,

affirmed the decision of this court (168 *Ga.* 705), denying unto the Georgia Power Co. the right to surrender unto the City of Decatur the charter granted by it to the Georgia Ry. & Electric Co. to operate the street-railway line in question on the ground that said railway can not be operated under said rate contract without a loss and therefore amounts to a confiscation of its property, in violation of the 14th amendment of the constitution of the United States; the court holding that the appellant company is bound under its contract to operate said street railway for the duration of the charter of the Georgia Railway & Electric Co., saying: "There is nothing in the ordinance or contract to indicate a purpose to terminate the obligation of the carrier in respect of the 5-cent fare while it continues to operate the line as a part of its system under its present franchise, and the contract will continue to bind petitioner during the period intended by the parties, unless earlier altered by them or relaxed by State authority. The losses attributable to the stretch of track in question and the 5-cent fare are immaterial while the rate contract continues." Georgia Power Co. *v.* Decatur, 281 U. S. 510 (50 Sup. Ct. 369, 74 L. ed. 533).

In Columbus Ry. &c. Co. *v.* Columbus, 249 U. S. 399 (39 Sup. Ct. 349, 63 L. ed. 669), wherein the street-railway company sought to relieve itself of a rate contract entered into with the City of Columbus, Ohio, without the consent of the city, and also to surrender its franchise to the city, because it was complained that war conditions and increase of labor costs were causing the company to operate at a great loss, the court said: "If a party charges himself with an obligation possible to be performed, he must abide by it unless performance is rendered impossible by the act of God, the law, or the other party. Unforeseen difficulties will not excuse performance. Where the parties have made no provision for a dispensation, the terms of the contract will prevail. We reach the conclusion that the district court was right in holding that this bill presented no grounds absolving the company from its contract, and justifying the surrender of its charter." See also Durham Pub. Serv. Co. *v.* Durham, supra. Under the proof submitted, it is obvious that if there is any hardship worked on the street-railway company by the exercise of the charter powers ordering said paving, it is not due to any arbitrary abuse of the legislative authority by the city commissioners or the municipal authorities

in determining that the paving of the street is a public benefit, as well as a benefit to the property of the railway company, but is necessarily the result of the operations of the rate-fixing contract which the street-railway company sought and voluntarily entered into because it believed it to be to its interest to do so. If this act has proved to have been a mistake in the light of subsequent events, it in no wise relieves the railway company from discharging the legal duty imposed upon it of paying its just proportion of paving the street occupied by its tracks by virtue of the easement granted unto it by the municipality. The municipality of Decatur is in no wise responsible for the operations of the railway system under the terms of the contract, as it is bound thereby whether the earnings of the company operating thereunder increase or diminish. The municipality could not be heard to insist upon a reduction of the rates fixed by the contract if the operations thereunder had resulted in great earnings over operating costs by the company. If it were not for the existence of this rate-fixing contract, the railway company would have no cause to complain of a loss in operating expenses, as it could then do doubtless what it has already done in other cities wherein it operates street railways, viz., apply to the Public Service Commission of the State for authority to increase its fares over said line so as to permit such earnings thereon as would compensate it as a return on its capital investment and costs of operating expenses, which necessarily includes the burden of a paving assessment against its property, which said commission would have the power to grant on proper showing. Code, § 2662 (8 Park's Supp. 1922, and Michie). It is worthy of notice that the record in this case shows that there has been an increase of travel over said line, resulting in an order of the Public Service Commission requiring the inauguration of additional facilities to accomodate the traveling public during rush hours, while the court will take judicial cognizance of the large increase of population in the City of Decatur and its environments since the creation of the rate-fixing contract. Doubtless, were it not for the existence of the rate-fixing contract, the power company would find its line from Atlanta to Decatur to be one of the best paying divisions of its extensive railway system throughout the State.

Can the contention of the appellant that the lien for the paving assessment can not be enforced personally or generally against the

street-railway company and its property in Decatur used by it in the operation of the street-railway system therein, but can only be enforced against its property located on the street which was paved, be sustained? The legislature, by virtue of said acts amending the charter of Decatur, expressly impressed all liens for paving assessed against street-railway companies upon the said companies and all of their property located in said municipality, used in the operation of its street-railway system therein, which we think it had the power to do. The power of a municipality to hold a street-railway company liable generally and personally for the payment of a paving assessment levied against it under legislative authority was expressly held by this court in *City of Atlanta* v. *Gate City St. Ry. Co.,* 80 *Ga.* 276 (supra). In that case the railway company refused to pave three feet of the street outside of the tracks of the company, as the charter and ordinance of the City of Atlanta required it to do; and the city made an assessment against the railway company for the costs thereof, and in default of payment issued its execution therefor personally against the company, which sought to enjoin its enforcement, which relief the trial court denied, and the judgment on appeal was affirmed. To like effect is the decision in *City of Atlanta* v. *Georgia Ry. &c. Co.,* 153 *Ga.* 335 (supra), in which this court is a well-reasoned decision construed charter powers very similar to those now under review as being of binding force; and a mandamus absolute was affirmed, requiring the railway company to pay the costs of certain paving assessments which it sought to evade. In considering the charter powers of Decatur as amended by the act of 1919, it was held by the Court of Appeals, in *Georgia Ry. &c. Co.* v. *Decatur,* 29 *Ga. App.* 653 (4) (116 S. E. 645), that "it must be held that the power to levy for assessments is not thereby limited to property abutting on the street improved, but that the act confers the virtual equivalent of express authority to levy upon some other property within the municipality."

The power of the legislature to create a lien upon the property generally of the street-railway company for local assessments is stated as follows: "The legislature has the power to declare an assessment for paving of that portion of the street between the tracks of the street-railway company to be a blanket lien on the property of the company as a security for its payment. . . Where a railroad right of way is subject to an assessment, it may

be subject to the lien thereof, regardless of whether or not the right of way can be sold under execution to satisfy a judgment for enforcement of the assessment." 44 C. J. 802, § 3409; 25 R. C. L. 174, § 87; Pittsburgh &c. Ry. Co. *v.* Fish, 158 Ind. 525 (63 N. E. 454); Louisville &c. Ry. Co. *v.* State, 8 Ind. App. 377 (35 N. E. 916); Railway Co. *v.* Boney, 117 Ind. 501 (20 N. E. 432, 3 L. R. A. 435); Louisville &c. Co. *v.* State, 112 Ind. 443 (24 N. E. 350). While the legislature has empowered the municipality to impress its lien for the cost of the paving assessment ordered levied against the street-railway company on all of its property in said city, used by the company in operating its street-railway system, and to issue an execution therefor to be collected by a levy and sale, yet it did not expressly authorize it to enforce its lien by a levy and sale of any particular part of its tracks. Without such express authority from the legislature, a levy and sale of a portion of said tracks would be in violation of the public policy of this State. In *Georgia Ry. &c. Co.* v. *Atlanta,* 144 *Ga.* 722 (supra), it was held: "A segment of a street railway located on its own property abutting on a street upon which public improvements have been made, and against which it is sought to enforce an assessment, is, in the absence of statutory authority, not liable to levy and sale, so as to carve a segment out of the railroad track upon which the levy is made." Also, in *Georgia Ry. &c. Co.* v. *Decatur,* 137 *Ga.* 537 (supra), it was said: "A majority of the authorities are to the effect that the track, rails, and ties of a railroad company can not be sold by piecemeal, in the absence of express legislative permission. The reason of the rule is that a railroad company is a quasi-public institution, and owes a duty to the public to discharge the objects of its franchise, and a compulsory sale of a fragment of its track will prevent its discharge of this duty." To like effect is the following authority: "Such property of a railroad corporation as is essential to the operation of the road will not be ordered sold by piecemeal to satisfy a statutory lien for street improvements, but in lieu thereof the court has power to render a personal judgment against the corporation, to be collected as ordinary judgments are collected." Pittsburgh &c. Ry. Co. *v.* Fish, supra. See also 25 R. C. L. 174, § 87; 44 C. J. 877, § 3585.

When the Town of Decatur granted the franchise to the street-railway company, authorizing the use and occupancy of its public

streets for the operation of its railway tracks, it did so on the theory that its citizens would enjoy the benefits of adequate transportation facilities thereon, and that the company would continue to serve the public; and therefore it has resisted the efforts of the railway company to dismantle its tracks and discontinue said service, because it entered into the rate-fixing contract; and until the legislature expressly empowers the municipality to levy upon and sell a segment of the company's tracks for the purpose of enforcing the collection of a local paving assessment, it can not do so. Neither can the street-railway company, by its refusal to pay the lawful assessments ordered levied against it, force the municipality to levy upon and sell the track located on the street paved, thus disintegrating its street-railway system therein, in order that it may be relieved of operating said system under the terms of the rate-fixing contract. We therefore hold that said paving assessment levied by the City of Decatur against the street-railway company's property, under said legislative acts amending the charter of said city, is a binding lien upon all of the property of the Georgia Railway and Electric Co., owned by it within said municipality, and used in the operation of its street-railway system therein, under the facts of this case, at the time of the issuance of the execution therefor.

■ The appellant insists that the legislature had no authority to empower the City of Decatur to collect its paving assessment against the property generally of the street-railway company; and that in so far as this power is conferred, the legislative act and the ordinance enacted by the municipality are unconstitutional in that the exercise of such power amounts to a confiscation of its property in violation of the due-process and the equal-protection clauses of the 14th amendment to the constitution of the United States, and as embodied in the constitution of Georgia. Code, §§ 6358, 6359. In granting authority to the City of Decatur to pave its streets, and, when there is a street or other railway track located therein, to assess the cost of paving that portion of the track between and for two feet on either side of said tracks generally against the company owning said tracks and its property in said city, used in the operation of its street-railway system therein, the exercise of such authority is of the same binding force and effect as though made by the General Assembly itself. "Whether the entire amount, or a part only, of the costs of the local improvement

shall be imposed as a special tax upon the property benefited, and whether the tax shall be distributed upon a consideration of the particular benefit to particular lots, or apportioned according to frontage upon streets, their values, or their area, are matters of legislative discretion, subject of course to judicial relief in cases of actual abuse of power, or of substantial error in executing it." Hancock v. City of Muskogee, 250 U. S. 454 (supra); Kansas City So. Ry. v. Road Imp. Dist., 266 U. S. 379 (supra). There is a broad distinction between the fee-simple title of an individual owner of property abutting on a street improved, and the easement of a street-railway company under its franchise to occupy a public street in a municipality with its right of way, tracks, rolling-stock, and other property which go to constitute a street-railway system. The rule with respect to collecting paving costs assessed against the property of an abutting-property owner by subjecting only the abutting property itself on the street improved, as this court held in Brumby v. Harris, 107 Ga. 258 (33 S. E. 49), is not impaired by the legislative acts in question, but is expressly preserved thereby. By no stretch of the legislative imagination could it be said that other property of an owner in·fee not located on the street improved would be benefited by such local improvement; but the property rights of a street-railway company properly come under an entirely different classification, to which a separate rule of assessment must be applied in order to preserve its property to the public use to which it is dedicated under its franchise. All of the property of a street-railway company is essential to the discharge of its duty as a public-service corporation. Each and every line of tracks on the different streets of the municipality belonging to the company, and its appliances, machinery, and buildings, used in the operation of its cars upon its tracks, are integrated in the whole system; and it is not unreasonable for the legislature to say that a local improvement which benefits one division of its tracks also benefits the entire street-railway system of its tracks.

In the case of Durham Pub. Serv. Co. v. Durham, 261 U. S. 149 (supra), in which a paving assessment had been levied by the City of Durham for paving the area covered by the company's tracks on a street which the city ordered paved, the court said: "The power of the legislature to make reasonable classifications and to impose a different burden upon several classes can not be denied. There

are obvious reasons for imposing peculiar obligations upon a railway in respect to streets occupied by its tracks. The facts and circumstances disclosed by the present record are not sufficient to justify us in overruling the judgment of the State court, which held that the assessment was not the result of arbitrary or wholly unreasonable legislative action." It must therefore be assumed, unless there has been an abuse in the exercise of the legislative power granted to said city, or the legislative authority granted is wholly unreasonable, that there is no confiscation of the railway company's property under said charter powers, in violation of the constitution of the United States or the constitution of the State of Georgia. The city has levied the paving assessment under the legislative authority conferred upon it; and if the railway company is unable to pay the amount thereof because it is unable to earn anything over and above its operating expenses, the record in the case does not disclose that it is because of any abuse of legislative authority by the municipal authorities, or wholly unreasonable legislative action, but solely because the company is operating under a rate-fixing contract of which it was entirely cognizant at the time it purchased the street-railway system in said city, which is valid and subsisting, and the inhibitions of which can not be pleaded as an excuse for failure to meet the legal exactions impressed upon the property thus acquired. Columbus Ry. &c. Co. v. Columbus, 249 U. S. 399 (supra); Durham Pub. Serv. Co. v. Durham, 261 U. S. 149 (supra). And especially is this true when no one can say with certainty that the costs of operating the street-railway line in question will always exceed the income to be derived therefrom during the existence of the rate contract, or that costs of operation will not be less in the future than at present.

In affirming the decision of this court in *Toombs* v. *Citizens Bank,* 169 *Ga.* 115, in which the constitutionality of the legislative act then under consideration was attacked, the Supreme Court of the United States said: "In assailing the constitutionality of a State statute, the burden rests upon appellant to establish that it infringes the constitutional guarantee which it invokes. If the State court has not otherwise construed it and it is susceptible of an interpretation which conforms to the constitutional requirements, doubts must be resolved in favor of, and not against, the State." Toombs v. Citizens Bank, 281 U. S. 643 (50 Sup. Ct. 434,

L. ed.    ), citing Corporation Commission of Oklahoma *v.* Lowe, 281 U. S. 431, 50 Sup. Ct. 397, 74 L. ed. 517; South Utah Mines &c. *v.* Beaver County, 262 U. S. 325, 331 (43 Sup. Ct. 577, 67 L. ed. 1004). We therefore hold that the acts of the legislature amending the charter of said city, and the ordinances passed thereunder by the municipal authorities ordering the levying of the cost of said paving assessment against the street-railway company and its property located therein and used by it in the operation of said street-railway system, are not violative of the constitutional provisions cited above. Neither are they in violation of par. 1 of sec. 3 of art. 1 of the constitution of Georgia, against the taking of private property for public use without paying adequate compensation therefor (Code, § 6388), as that provision relates to the exercise of the power of eminent domain; whereas the levying of any assessment for a local public benefit is imposed as a special tax in the exercise of the police power of the State. Neither do they violate par. 1 of sec. 2 of art. 7 of the constitution of Georgia, which provides a uniform system of taxation for the general support of the government (§ 6553). *Hayden* v. *Atlanta,* 70 *Ga.* 817; *Speer* v. *Athens,* supra; *Lanahan* v. *Rome,* 136 *Ga.* 398 (71 S. E. 770); *Georgia Ry. &c. Co.* v. *Atlanta,* supra; Louisville &c. R. Co. *v.* Barber, supra; Kansas City So. Co. *v.* Road Imp. Dist., supra; Branson *v.* Bush, supra; Columbus Ry. &c. Co. *v.* Columbus, supra; Durham Pub. Serv. Co. *v.* Durham, supra.

■ Having held that the paving assessment in question is, because of said legislative acts, a binding lien in favor of the City of Decatur upon all of the property belonging to the Georgia Railway & Electric Co., owned and located in said municipality, and used in the operation of its street-railway system therein, and that the collection thereof is subject to judicial enforcement, it is also necessary to decide to what extent, if any, the Georgia Railway & Power Co. and the Georgia Power Co. have become bound for the payment of the amount of said assessment. According to the agreed statement of facts in this case, it is admitted that the Georgia Railway & Electric Co. owned the franchise granted by the municipality of Decatur, under which the street-railway system therein is operated, and of which the tracts laid on East Ponce de Leon Avenue are a part, all of which, together with all of the other property of said company located in said city, was leased by said owning company

on January 1, 1912, to the Georgia Railway & Power Co., for a term of 999 years; and that said lessee was in control of and operating said railway system at the time the paving of said street was ordered by the municipality. . The portion of the lease with respect to the undertakings of the lessee, as regards the assuming of the debts, assessments, and liabilities of the lessor generally, is as follows: "The lessee covenants that it will pay, satisfy, and discharge, as the same shall become due and payable, all taxes, rates, charges, licenses, and assessments, general and special, ordinary and extraordinary, of every nature and description which have been or may be lawfully imposed or assumed during the continuance of this lease in any way upon the lessor or upon the lessee, either with reference to the capital stock or income of the lessor, or to the property, earnings, contracts, rights, privileges, or franchises hereby demised, or to the sum of money payable by the lessee hereunder to the shareholders of the lessor or otherwise; and also that it will pay all sums of money which the lessor now may be or hereafter become liable to pay by law, contract, or otherwise, for the possession, enjoyment, or perpetuation of any of its rights, powers, privileges, or franchises; said payments to be made as the same become due to the officers or other persons entitled by law to receive the same. . . And if the lessee shall desire to resist by legal proceedings the payment of any tax or assessment, and shall so notify the lessor, and the lessee shall commence such legal proceedings in good faith, the lessor shall not pay, nor shall the lessee be obliged to pay, any such tax or assessment until 30 days after the final adjudication thereof. . . The lessee hereby assumes all the contracts and other obligations of the lessor, and covenants that it will pay all the indebtedness of the lessor shown by its books and records, and also covenants that it will assume and pay all other debts, obligations, and liabilities both present and future of the lessor." It is clear that under this contract the Georgia Railway & Power Co. assumed and became bound for the payment of any paving assessment legally due by the lessor to the City of Decatur.

Subsequently to the levying of the paving assessment against the lessee on June 21, 1926, an agreement was entered into on November 16, 1926, between the Georgia Railway & Electric Co., the Georgia Ry. & Power Co., and other quasi-public service corporations, for the consolidation of all their assets, including the railway sys-

tem and franchise located in said municipality, under the provisions of the Civil Code, §§ 2607, 2608, 2609, into a consolidated corporation, viz., the Georgia Power Co., which agreement was effected by the filing of the same with the Secretary of State and the applying for a charter of incorporation, which was issued by said official on February 25, 1927, for a period of 101 years; said consolidated corporation thereby taking over the title, possession, and control of all the assets of said constituent corporations, including the franchise and property of the railway system in Decatur. The consolidation agreement provided in part as follows: "Then and thereafter the consolidated corporation shall be possessed of all rights, privileges, powers and franchises as well of a public as of a private nature, and be subject to all the duties, liabilities, debts and obligations of each of the constituent corporations participating in this joint agreement; and thereupon the corporate franchises, entity and existence of the constituent corporations shall pass to and be consolidated into the consolidated corporation, and the consolidated corporation shall be fully vested therewith, and the corporate existence of the constituent corporations shall cease except as consolidated into the consolidated corporation, or as may be requisite for carrying out the purposes of this joint agreement . . and all debts, liabilities and duties of the constituent corporations shall thenceforth attach to the consolidated corporation and may be enforced against it to the same extent as if said debts, liabilities and duties had been incurred and contracted by it." It would be difficult to find more comprehensive and emphatic language in a contract assuming the liabilities of the constituent corporations; but in effecting said consolidation agreement thereby assuming the lawful debts and obligations of the constituent corporations, said agreement merely incorporates therein the provisions of the Code, § 2609, with respect to such a consolidation agreement, "that such purchasing or consolidating corporation shall thenceforth constitute a corporation by the name provided in said agreement; and thereafter such purchasing or consolidated corporation shall be possessed of all the rights, privileges, powers, and franchises, as well of a public as of a private nature, and be subject to all the duties and liabilities, debts and obligations, of each of the corporations participating in such agreement." The Georgia Power Co., as such, is therefore liable unto the City of Decatur for the amount

of said paving assessment as is evidenced by its lien therefor, and which may be enforced by appropriate legal proceedings. See *Mobley* v. *Hagedorn Co.,* 168 *Ga.* 385 (147 S. E. 890); City of Kinston *v.* Atlantic etc., 183 N. C. 14 (110 S. E. 645); Broad River Power Co. *v.* South Carolina, 281 U. S. 537 (50 Sup. Ct. 401, 74 L. ed. 527).

■ "When any sheriff or other officer shall levy an execution or other process on property claimed by a third person not a party to such execution, such person, his agent, or attorney shall make oath to such property." Code, §. 5157. "Our claim laws are permissible, and not mandatory." *Whillington* v. *Wright,* 9 *Ga.* 23 (3). "The claim laws give to owners a cumulative remedy. They do not abrogate or supersede remedies which existed before." *Bodega* v. *Perkerson,* 60 *Ga.* 516 (2), 519; *Sears* v. *Bagwell,* 69 *Ga.* 429 (2). "Our claim laws are peculiar to our State. . . They are in the nature of equitable proceedings. The plaintiff in execution asserts, by his levy, the liability of the property to pay his judgment. The claimant alleges title; and the issue is, is the title of the claimant good against the judgment." *Williams* v. *Martin,* 7 *Ga.* 377, 380. "A claim is really an intervention authorized by statute in a proceeding to which the claimant is not a party, and therefore a claim partakes of the nature of an equitable proceeding. . . It follows that when the progress of an execution is stopped by a claim and the proceeding is converted into a quasi-equitable proceeding, either the plaintiff in execution or the claimant can, by way of amendment to the issue thus joined, introduce, in aid of their respective demands, any equitable matter germane to the issue, which is whether or not the property is subject to the execution. . . The plaintiff in execution in a claim case may bring an independent equitable petition in aid of his levy, and set up any matter which would make the enforcement of his execution legal and proper. And he can likewise offer an amendment in the claim case and set up any matter which is germane to the issue, or which tends to show that the property is subject to the execution." *Ford* v. *Holloway,* 112 *Ga.* 851, 852 (38 S. E. 373). To same effect see *Myers* v. *Warrenfells,* 153 *Ga.* 648, 653 (113 S. E. 180). In *Cox* v. *Cox,* 48 *Ga.* 619, it was held, that, while equitable amendments may be filed in a claim case, "the equities set up must go to illustrate the issue, to wit, the authority of the sheriff to make

the levy. They must show that the land is subject to the lien of the judgment on the part of the plaintiff; or if put on the claimant, they must go to show that the land is not subject;" and that an attempt to enlarge the issue by an amendment seeking otherwise to subject the land levied on, because of an additional liability, would not be germane to the issue formed under our claim laws, and therefore can not be allowed. It was held, in *Bryant* v. *Simpson*, 92 *Ga.* 307 (18 S. E. 547), that the question of the personal liability of the claimant could not be raised and decided in a claim case, as the sole question at issue is whether or not the property levied upon is subject to sale under execution. In *Hardman* v. *Cooper*, 107 *Ga.* 251 (33 S. E. 73), this court held, where an execution against one in his individual capacity was levied upon land to which the defendant as a legal representative of a deceased person filed a meritorious claim, that it was not allowable for the plaintiff in execution to file an equitable amendment alleging that a portion of the debt embraced in the execution was due by the deceased person, and thereby obtain a judgment subjecting the property levied upon to the satisfaction pro tanto of such execution; the court saying that "the claim was interposed to test the question whether the land was subject to the judgment—whether the sheriff had a right to levy the execution on the land claimed and sell it for the debt." We therefore hold that while equitable pleadings may be filed by way of amendment in a claim case, by either party thereto, such pleadings must be germane to the issue in the case, which is whether the property levied upon is or is not subject to the execution levied; and this rule can not be so extended as to convert the issue in a claim case into a general action where either party may obtain a general judgment in personam, as was done in the instant case. It therefore follows that the direction of the verdict and the entering of the judgment and decree thereon by the court below was error for this reason; and the judgment overruling the motion for a new trial is

*Reversed. Beck, P. J., and Eve, Gardner, and Graham, JJ., concur in the judgment.*

EVE, J., concurring specially. I do not care to be committed, directly or indirectly, to the legal soundness of several of the rulings announced in the majority opinion. Surely the importance of the principles involved and the far-reaching effect of those hold-

ings justify the setting forth of my reasons for failing to concur. It appears to me that the act of 1924, amending the act of 1919, is unconstitutional in that it confers upon the City of Decatur unlimited power to make collection of street-improvement assessments by "proceedings against *any property of the railroad company.*" On page 19 of its brief the City of Decatur declares this to be the meaning of the act. In spite of such admission on the part of the city, and seemingly without regard to the language of the statute, the majority opinion declares that its purpose is to subject "the property of the company used in the operation of its business in the City of Decatur." It would seem that the plain language used by the General Assembly, and the construction placed upon it by the defendant in error, should be accepted as conclusive in determining legislative intent. Be this as it may, the construction forced into it does not safeguard the statute against an attack on the ground of unconstitutionality. Broadly speaking, the General Assembly in delegating and the City of Decatur in exercising the right to pave the city's streets are entirely within constitutional limitations. The city has the right to select the streets to be improved; to determine the character of the paving, the method of arriving at assessments, the distribution thereof among the various parcels of abutting real estate, and the collection of all amounts due through levy upon and sale of such abutting property, subject to rules of uniformity and laws against discriminations. The city has the charter power to levy against street-railway property legally abutting upon the paving project a share of such cost, and to enforce its charter right to require the company to pay for all paving within its tracks and for two feet on each side thereof.

It seems to be within the power of our lawmakers to raise a presumption of benefits to abutting real estate through paving, and the courts will not intervene except to prevent gross injustice. This is a prima facie presumption, however, intended to protect municipalities in undertaking schemes of development, which are favored by the law, and may not be used as a cloak under which to work confiscation. While an owner of real estate lying against or along any given paving project may not halt the making of the improvement by setting up that his property will not be benefited, he may nevertheless raise, after assessment and levy, the question of confiscation and have the same determined by a lawful tribunal of this State.

The law of the land abhors the confiscation of the property of the citizen, as the law of nature is said to abhor a vacuum. Let it be said, in passing, that after the city has reassessed and made legal levy upon the abutting property of the company, the company may apply to the courts for a determination of this question of confiscation. To deny to any taxpayer, whether an individual or a corporation, this protection, would place him at the mercy of the whims of municipal officers, and face to face with a continuing threat of bankruptcy through extravagant or needless schemes of village development.

The Georgia Power Company can not consistently maintain that, as the successor of the Georgia Railway & Electric Company and the Georgia Railway & Power Company, it may not be held liable to the extent of lawful assessment against, levy upon, and sale of the property held by it as assignee or transferee, where such property abuts upon the improved street. I am of the opinion that with a legal assessment and a proper levy such property may be made subject to the debt. A new trial having been granted, there is neither excuse nor justification for a determination at this time of the legality of the assessment and its binding force against the Georgia Power Company as assignee of the Georgia Railway and Electric Company. Conceding, for the purpose of this discussion only, the constitutionality of the act of 1924, this question should be left open for future determination. I oppose the erection at this time of any judicial barrier against a fair and equitable determination of this important question. Our attention is called to the case of *Ga. Ry. &c. Co.* v. *Decatur,* 29 *Ga. App.* 653 (116 S. E. 645), where it was said that "the constitutionality or validity of the act of August 18, 1919, . . under which the municipality contends that such a levy upon such other property is authorized, is in no wise drawn in question by the record in the instant case; and therefore this court, being called upon to pass upon the act, must construe it upon the assumption that it is valid." Seemingly a rather weak stimulant for the contention of the defendant in error. In the leading case on the subject of paving assessments, *Hayden* v. *Alanta,* 70 *Ga.* 817, the assessment was "against the abutting property." In *Ga. R. Co.* v. *Decatur,* 137 *Ga.* 538 (73 S. E. 830, 40 L. R. A. (N. S.) 935), the city was proceeding against "land abutting on sewers." *Ga. Ry. &c. Co.* v. *Atlanta,* 153 *Ga.* 335, was

a "street-repair" case; a proceeding based upon the city's police power; its authority to make persons using same keep the pavement in condition safe for traffic. We are safe in saying that the learned Justice did not intend to substitute "mandamus" for "paving assessment."

Within our information *this* is the only case known to the records in Georgia, except that in the 29 *Ga. App.*, supra, in which an effort has been made to make *any* mean *all* property of a street-railroad company subject to such assessments. It will be noted that the City of Decatur in making claim that "any property" (and this must mean whether located in that city or not) is subject. Should the company own a long, thin, worthless strip of land in any city, through which it may prove to be necessary or desirable to lay a street, the Georgia Power Company, or like corporation, may well apprehend the sale of its Atlanta offices and power-houses to liquidate a paving assessment. Under legislative sanction the municipalities of this State have a wide discretion and a broad authority in the making of public improvements. They may select streets to be improved, may tax the cost of paving against abutting real-estate owners, and may collect the amount thereof by levy upon and sale of the abutting, presumptively benefited, property. No question is raised in this case as to the legal right of the lawmaking body to delegate and the City of Decatur to exercise, through proper ordinance, all of these powers. Presumptively the city is not claiming the legal right, and certainly it is making no effort, to collect from property owners other than the Georgia Power Company, through levy and sale of real estate remote from the sphere of benefits; that is, away from and not physically connected with the paving project. We must therefore determine the question, may the City of Decatur collect assessments for street paving through levy and sale of the property of a street-railroad company not abutting upon or physically connected with the improved portion of the street? It is not necessary to hold any protracted judicial autopsy, or any more or less minute judicial dissection of the body of the act of 1924. If this limb of enforcement is infected with a gangrene of unconstitutionality, it should be amputated.

In the first place it may be contended, with some degree of plausibility, that street railways and other similar enterprises must, of necessity, be placed upon a different footing from the ordinary

owner of abutting real estate. The necessity may exist, and the desirability and helpfulness of such a holding, from the standpoint of the ambitious municipality, clearly appears; but these must not lead us from the pathway of justice and the true law into thorny ways of injustice and discrimination. If discrimination and distinction are to be made, let them be such as the law will justify, or at least forgive. Out of the necessities of the case and for the benefit of the whole, government *must* retain and exercise *some* control or dominion over the lives, liberty, and property of the citizen. Any interference with these things by governmental agencies must have regard to legal rights, and proceed in accordance with the prescribed forms of law. There are seemingly some four methods by which the State may, in its own name and behalf, or for the presumptive good of the public, do the not always painless act of taking from the citizens or residents (and these terms include corporations) the fruits of long and laborious efforts and the exercise of acquisitive instincts:

1. *Taxation:* This is, of course, an inherent and inalienable right of government; to be exercised in the legislative discretion, if within constitutional limitations. This is based upon governmental need and conclusively presumed general benefits.

2. *Condemnation,* or the *right of eminent domain:* This is a right to be exercised by the State in its sovereign capacity for its own uses, or for the public good in the delegation of the right to the individual or corporation. Considerations of public benefit underlie it. In all cases just and adequate compensation must first be paid for all property taken.

3. *By judgment and execution regularly issued through courts of competent jurisdiction:* Here a consideration is conclusively presumed.

4. *Assessment for paving and other public improvement by State, county, or municipality:* This right is not asserted as taxation in a strict sense; not in the exercise of the right of eminent domain; not through suit and judgment in the courts. This right arises through the necessity for public improvement by governmental agencies, but resists unconstitutionality solely on the theory that real estate physically abutting upon improved highways will be benefited through both proximity and actual physical contact with the improvement.

We deem it proper to consider all of these propositions, but are, of course, primarily concerned with the fourth. In order that the rule recognized in this State may be thoroughly understood, we will copy the announcement made in the case of *Hayden* v. *Atlanta,* supra: "Taxes are different from assessments for local improvements, *taxes* being burdens upon all persons and property alike, and compensated for by equal protection to all, while assessments are not burdens but equivalents, and are laid for local purposes upon local objects, and are compensated for to some extent in local benefits and improvements, enhancing the value of the property assessed. Taxes are imposed on the person; assessments are imposed on the property." Also the rule laid down in *Brumby* v. *Harris,* 107 *Ga.* 258: "Assessments for the improvement of a street are sustained by courts only because of benefit to the particular property, and the executions issued therefor do not run genrally against the other property of the owner not situated upon the street." In 12 C. J. 1264, § 1065, it is said that "it has usually been held that a personal judgment for an assessment is void, even against a resident owner, for the reason that assessments are based on the theory of special benefits to property, and that a taking of the entire property and the imposition of personal liability in addition would constitute a clear case of confiscation." We are safe, then, in holding that a paving assessment is not a tax; that it can not be made the basis for a general judgment; that it is a proceeding in rem, and operates against the abutting and benefited property, and that alone; and that the rule will operate to protect the property of a street-railway company not abutting upon the paving, unless otherwise directed by a constitutional general law applicable to all street railways and their property.

Our attention is called to the case of Durham P. S. Co. *v.* Durham, 261 U. S. 149, where it was held: "The power of the legislature to make reasonable classifications and impose a different burden upon several classes can not be denied. There are obvious reasons for imposing peculiar relations upon a railway in respect of streets occupied by its tracks." This merely declares a rule long recognized in practically all jurisdictions. It must be noted, however, that in the case before us, it is not a question of classification; we concede the right of the city, under legislative sanction, to require the company to pave between its tracks and two feet on each

side thereof; more than this if within reason. The question involved in this case is the *collection of assessments;* can the legislative authority, acting through its municipal subdivision, without let or hindrance pave when and where it will within the corporate limits, ignore *the abutting property of the company,* issue execution based upon a general judgment, and sell or sacrifice the property of the company wherever found?· It must be conceded that no property owner may stay the march of public improvement by giving notice that it will not benefit his property touched by it. The city is vested with the power to fix the time and name the streets that it will pave, and the owner is practically powerless. In the absence of any positive ruling on a given point of law, we may consider the equities of the situation. Who is the *aggressor* in this case; who moved first? The City of Decatur. If it moved with its eyes closed, it must suffer the consequences of its own stumble. All persons, and this presumptively includes municipal corporations, are presumed to know the law; and to know the facts, for that matter. Before embarking on this enterprise, the City of Decatur was aware of the fact that the pro rata portion of the cost of the paving assessable against the Georgia Power Company would be approximately $14,000. It knew that the entire property would not bring the amount. It now proposes, with the assistance of the General Assembly and the Supreme Court, ignoring abutting property, to force the company to operate this money-losing enterprise, and compel payment of a large portion of the cost of its city betterment through levy upon and sale of all property it is able to lay hands on in the City of Decatur, possibly elsewhere, whether abutting or not. *Low fare and cheap thoroughfare.*

Governmental powers as exercised by the municipalities of Georgia are broad and far-reaching. There are some things they cannot do, even with legislative sanction; they may not change an action in rem to an action in personam, certainly not in a special instance; they may not confiscate the property of the individual or the corporation, even though the result of a successsful effort to do so would bring added beauty to a town and comfort to the inhabitants thereof. We are called upon to witness that the legislature creates the corporation and grants its special franchise and privileges, and therefore has the power to amend its charter and franchise and impose additional duties upon the corporation. This we con-

cede; the rule is especially applicable to cases where the regulations or provisions are generally within the scope of the charter at the time of its acceptance. In the case now under consideration, the "regulation" or "additional duty" sought to be imposed was not indicated in the original charter, but first appears in the act of 1924. Be this as it may; certainly it must be legally true that the legislative power can not, by subsequent amendment, work confiscation of the property of the corporation, nor discriminate against it in violation of any constitutional provision. It would not seem consistent with the rules of justice that the mere acceptance of a franchise granting privileges and setting forth liabilities would, within itself, work an estoppel and require submission on the part of the grantee to any and all things sought to be imposed upon it by joint legislative and municipal action.

The constitution of Georgia, art. 1, sec. 1, par. 2 (Code § 6358) provides: "Protection to person and property is the paramount duty of government, and shall be impartial and complete." Under the act of 1924, granting to the City of Decatur authority to make a general assessment against the Georgia Power Company for cost of street paving, and the ordinance based thereon, providing for the enforcement of collection through levy and sale of the property of the company generally, is the company impartially and completely protected in the ownership and possession of its property? *I find no authority for the distinctions or discrimination now attempted to be made against it, and therefore hold that so much of the act and of the ordinance as permits and endeavors to enforce a rule of liability greater, or a lien different, from that applied in the case of the ordinary private property owner, or a rule of assessment and collection at variance with the general plan of the city, is discriminatory and denies to the company that impartial and complete protection demanded by this portion of the constitution.* It is insisted that municipalities will be delayed and handicapped in the work of civic improvement, unless the method contemplated in the statute and ordinance referred to is upheld. It may be true, as an old wise wit, saw, or modern instance, that "necessity knows no law." It is our judgment, however, that the ancient adage should here fail of recognition and application. In the collection of such assessments as are legally made against this street railway, we know of no legal reason why the entire right of

way should not be levied upon and sold. A right of way is, under its franchise, by nature and inherently one tract or parcel of land, and must of necessity be indivisible, incapable of segmentation, and physically abutting and therefore presumptively benefited by the paving project throughout its entire length and over its entire breadth. It necessarily follows that all steel rails, cross-ties, and any and all other fixtures permanently annexed to the realty partake of its nature and are subject. Then, too, the franchise, leasehold, reversionary interests of the particular line may be brought under the hammer. They are the crops growing upon the realty, and should be subject as a part thereof. It seems to be conceded that the crop is poor; insufficiently irrigated by a small stream of five-cent fares in this hot, dry land of competition. At a cost of some $14,000, and with knowledge of the amount, the city paved two or three blocks of the street abutting on the line for a short distance. Conceding that there is presumptive benefit flowing to a street-railroad company as the result of the laying of pavement, as a matter of fact may we permit ourselves to believe that the benefits in this case are so great that, all of abutting property being insufficient to pay the amount, the city must claim the right to sell a power-house located a half mile from the improvement and in no way connected with the right of way? If this rule of presumptive benefits is broad enough to work in this case, why not in the case of a private landowner?

In summing up and concluding, I will state: The rule is generally recognized that "in no event is there a personal liability for improvement assessments in the absence of statutory authority:" 44 C. J. 877, § 3586. In some States personal liability may be set up and enforced by statute. 44 C. J. 877, § 3586. It is evident, however, that this rule rests upon the fact that in those States the assessments are styled "special taxes" and treated as such, and rest upon some special constitutional authority. Attention may be called to the fact that in many States, even where power is given to the legislature by the constitution to authorize local improvements in cities "by special taxation of contiguous property, *or otherwise*," the courts of appeal have held that this *does not confer upon the* General Assembly the power to make of *special improvement assessments a personal liability;* this on the ground "that such power would, *in violation of the principle upon which special assessments*

*are upheld, permit the enforcement of assessments against property not specially benefited by the improvement,* and would, in case the assessment should exceed the value of the property against which it was levied, operate as a taking of property for a public purpose without compensation." See 44 C. J. 877, citing decisions of California, Illinois, Kentucky, Missouri, North Carolina, South Dakota, and Virginia.

The Supreme Court of Georgia has held that such improvement assessments are not taxes; that the matter is one of "equivalents," that is direct benefits; that such assessments are not burdens, but "equivalents," and are laid for local purposes upon local objects: and that "taxes are imposed on the person; assessments are imposed on the property." What property? It has repeatedly been held that this means "abutting property."

Whatever may be the rule in some other States, based upon peculiar provisions of their constitutions, the rulings of their Supreme Courts, and their treatment of such assessments as "special taxes," the rule in Georgia is too clear for controversy: "Assessments for the improvement of a street are sustained by courts only because of benefits to the particular property [this must mean "abutting property"]; and the executions issued therefor do not run generally against other property of the owner not situated upon the street." In this case, as the General Assembly is seeking to make a personal liability, in other words a "tax" liability, against the Georgia Power Company, it' is endeavoring to levy a "special improvement tax," and in so doing it runs afoul of the tax-uniformity provision of the constitution of this State; and this special act is therefore palpably unconstitutional and void for that reason. The constitution of Georgia does not confer upon the legislative branch of the Government any authority to declare personal liability for street-improvement assessments. Improvement assessments carrying personal and general liability are, and must be, *"special taxes."* They run against both person and property, and pass beyond the definition or spirit of "equivalents." It is true that the General Assembly may authorize the sale of railroad-tracks or a segment thereof, but plainly this is abutting property in the complete and legal sense. Certainly it may not be inferred that property other than "abutting" real estate may be sold even through legislative sanction.

We recognize the rule that "a street-railway company holding a charter and using the streets of a city for the purpose of carrying on its business is in *some respects* and *for some purposes* the subject of legislative regulation and control. The rule is that when public highways are made the place of business, a right to regulate, in the interest of the safety and convenience of the other users of the highways and of the preservation of the highways themselves, arises independently of the nature of the business done. Such right of regulation does not carry with it power to make arbitrary classification, which would be violative of the 14th amendment of the constitution of the United States, guaranteeing equal protection; nor do they legally justify unreasonable exactions or requirements amounting to a deprivation of liberty or property, contrary to the *due-process* clause of such constitution." Conceding, for the purpose of the discussion, that there is vested in the legislative branch of the State government power to declare that *all property of all corporations or all street-railways* in the State of Georgia shall be subject to levy and sale for improvement assessments, whether such property is abutting or not, by what constitutional or other authority may it declare that the property of the Georgia Power Company *alone* is subject to levy and sale for such purposes when such assessments are made by the City of Decatur? Would this not be the "arbitrary classification" contemplated by the 14th amendment, or the "unreasonable exaction or requirement" guarded against by the "due-process" clause of the constitution of the United States? Possibly the point is not directly raised in the record, but it has been held on high authority, and seemingly it is a reasonable rule, that "A personal judgment can not be rendered against a lessee of the premises, even though the lease provides for the payment by the lessee of all assessments upon the property." See 44 C. J. 879, § 3587. Here we have the case of an admitted lessee and a personal judgment for an improvement assessment made by the City of Decatur.

GRAHAM, J., concurring specially. I concur in the judgment of reversal, but not fully in the opinion.

The act of 1919 as amended by the act of 1924, in question, if constitutional, discriminates in favor of the abutting real-estate owner against the railway company, and confers power broader than is expressed in the opinion, for the collection of the paving assess-

ment. The act, after giving full power to the city to pave, contains this provision: "and any street-railroad company or other railroad company having a track or tracks running along or across the streets, alleys, lanes, squares, or public places of said city where so improved shall be required to pay the actual cost in full of grading, regrading, paving, repaving, building, rebuilding, and otherwise improving or reimproving such street, alley, lane, square, or public place between their tracks and for two (2) feet on each side thereof; and in such cases and on such streets, alleys, lanes, squares, or public places where such assessments are made against such street-railroad company or other railroad company, the remaining cost of such improvement shall be assessed against the real estate abutting on the street, alley, lane, square, or public place where so improved; one half of such cost shall be assessed against the real estate abutting on one side of such street, alley, lane, square, or public place, and the other one half of said cost shall be assessed against the real estate abutting on the other side thereof." Under this act, as against the abutting real-estate owner the city can collect paving assessment only out of abutting real estate, while as to the railway the city may not be confined alone, as held in the majority opinion, to the collection of paving assessment out of the railway property in said municipality, used in the operation of its railway system therein, but it may collect same out of any property of the railway whether used in connection with the operation of its railway system in the city or not, and out of any property of the railway whether located in the city or elsewhere. If the construction of the act as expressed in the majority opinion be correct, then I concur in the same. But I think the act grants greater power than is given by such construction, and also discriminates. Therefore I join Judge Eve in his concurring opinion holding in this case the act unconstitutional. The city may collect for paving assessment, if lawfully made, out of any property of the railway company located in the city and used in the operation of its railway system in the city, but it may not lawfully go further.

Since there may be another trial of the case, in which the evidence may not be the same as in the present record, it is not now necessary to decide whether or not the assessment is lawful. Hence I do not concur in the majority opinion holding that under the facts in the record the assessment is legal, and that under the

case made the Georgia Power Company is liable for the assessment. If, however, in an appropriate action the assessment should be found lawful, then I am of the opinion that the same may be collected out of any property of the Georgia Power Company, for the reason that under its contract of consolidation the Georgia Power Company agreed to pay all lawful assessments against the Georgia Railway & Electric Company. The lawfulness of the assessment depends mainly on the necessity, benefits, and cost of the paving, and whether or not the cost amounts to more than the value of the railway property located within the city and used in the operation of its railway system therein. The law will not permit the city to take the entire property sought to be benefited by the paving, for the cost of the paving. Such would be confiscation, the taking of property without just compensation, which is not permissible. The act in question, if constitutional, confers and was obviously intended to confer on the city the power to subject for paving costs all the property of the railway, irrespective of its location or uses. The act attempts to give to the city the right to actually subject for paving assessment property other than that within the city, sought to be benefited by the pavement and used in the operation of the company's railway system therein. Such legislation goes too far, and should not be sanctioned.

Nor do I think the validity of the rate-fixing contract is involved in this case. This contract may be considered on the trial of the case, if suit be brought for the collection of the assessment and the lawfulness of the assessment should be contested, to illustate the benefit of the paving and the value of the street-railway property. This contract and any other fact tending to show the benefit of the paving or the value of the railway property within the city, used in the operation of the railway system therein, would be pertinent to the issue.